UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ROBERT D. GORDON, Receiver of Legisi
Marketing, Inc., Gregory N. McKnight and                    Hon.
Legisi Holding, LLC.

            Plaintiff,                                    Case No.

v.

ROYAL PALM REAL ESTATE INVESTMENT
FUND I, LLLP, a Florida limited liability limited
partnership, ROYAL PALM INVESTMENT
MANAGEMENT COMPANY, LLC, a Florida
limited liability company, ROYAL MARKETING
SERVICES, LLC, a Florida limited liability
company, ROBERT ROSETTO, ROXANNE
ROSETTO, BRUCE ROSETTO, ALAN D.
GODDARD, JR., MICHAEL A. LICHTENSTEIN,
and ERIC BLOOM,

            Defendants.

_____/

## COMPLAINT

Robert D. Gordon ("Gordon"), in his capacity as Receiver for the Estates of Legisi

Marketing, Inc., *et al.*, through his attorneys, Clark Hill PLC, states the following as his

Complaint against Defendants Royal Palm Real Estate Investment Fund I, LLLP, Royal Palm

Investment Management Company, LLC, Royal Marketing Services, LLC, Robert Rosetto,

Roxanne Rosetto, Bruce Rosetto Alan Goddard, Jr., Michael Lichtenstein, and Eric Bloom:

PARTIES AND JURISDICTION

1.      Gordon is the Receiver of the Estates of Gregory McKnight, Legisi Marketing, Inc. and Legisi Holdings, L.L.C. (collectively referred to as the "Receivership Estate"), having been appointed on May 5, 2008 by the Court in the case of *United States Securities and Exchange Commission v. McKnight, et al.,* United States District Court, Eastern District of Michigan, Case No. 08-11887 ("SEC Enforcement Action").

2.      Gordon is authorized to bring this action pursuant to 28 U.S.C. §§ 754 and 1692, Fed. R. Civ. P. 66, and by the Court's Order Appointing Receiver in the SEC Enforcement Action.

3.      Gordon is an individual with his principal place of business located at 151 S. Old Woodward Avenue, Suite 200, Birmingham, Michigan 48009.

4.      Gregory N. McKnight ("McKnight") is a resident of Swartz Creek, Michigan.

5.      Legisi Holdings, LLC ("Legisi Holdings") is a Nevis, West Indies limited liability company that McKnight formed in February 2006 with its principal place of business in Swartz Creek, Michigan.  The now defunct Legisi website represented that the Legisi Program (described below) was a wholly-owned subsidary of Legisi Holdings.  Legisi Holdings had no apparent business other than to serve as the entity through which McKnight conducted the offering of the Legisi Program investment contracts.

6.      Legisi Marketing, Inc. ("Legisi") is a Michigan corporation.  From its inception until the appointment of Gordon as its receiver, Legisi had its principal place of business in Flint,

2

Michigan.  Beginning in January 2007, McKnight deposited millions of dollars of Legisi investor funds in bank and brokerage accounts held in the name of Legisi Marketing.  McKnight used these accounts to make interest and principal payments to Legisi investors, to trade in securities and commodities, and to purchase real estate.

7.    At all relevant times, McKnight owned and controlled Legisi.

### THE DEFENDANTS

8.    Royal Palm Real Estate Investment Fund I, LLLP ("Royal Palm") is a Florida limited liability limited partnership with its principal place of business in Boca Raton, Florida.

9.    Royal Palm Investment Management Company, LLC ("RP Management") is a Florida limited liability company with its principal place of business in Boca Raton, Florida.

10.    RP Management is the general partner of Royal Palm.

11.    Royal Marketing Services, LLC ("Royal Marketing") is a Florida limited liability company with its principal place of business in Boca Raton, Florida.

12.    Royal Marketing is a 50% member of RP Management.

13.    Bruce Rosetto is an attorney who resides and conducts business in Boca Raton, Florida.

14.    Robert Rosetto is an individual who resides and conducts business in Boca Raton, Florida.

15.    Robert Rosetto is a 50% member and manager of Royal Marketing.

16.    Roxanne Rosetto is an individual who resides and conducts business in Boca Raton, Florida.

17.    Roxanne Rosetto is a 50% member and manager of Royal Marketing.

18.    Bruce Rosetto is the father of Robert Rosetto and spouse of Roxanne Rosetto.

19.    Although not named as a manager, partner, officer or director in any of the entities associated with Royal Palm, Bruce Rosetto exercised control over the day-to-day and policy management such that he functioned as a manager, partner officer and/or director of Royal Palm, RP Management, and Royal Marketing.

20.    Alan Goddard ("Goddard") is an individual who resides in New Jersey and regularly conducts business in Boca Raton, Florida, as well as New Jersey.

21.    Goddard is a member of RP Management.

22.    Michael Lichtenstein ("Lichtenstein") is an individual who resides and conducts business in Boca Raton, Florida.

23.    Lichtenstein is a member of RP Management.

24.    Eric Bloom ("Bloom") is an individual who resides and conducts business in Boca Raton, Florida.

25.    Bloom is a member of RP Management.

26.    The Court has subject matter jurisdiction over the claims arising under the securities laws of the United States, pursuant to 28 U.S.C. § 1331. The Court has subject matter jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, as such claims are so related to the federal claims asserted herein, and to the SEC Enforcement Action, as to form part of the same case or controversy under Article III of the United States Constitution.

27.    Further, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as it is a case between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

28.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 754 and 1391(b).

29.    In accordance with 28 U.S.C. § 754, Gordon filed copies of the Complaint and the Order Appointing Receiver in the SEC Enforcement Action in the United States District Court for the Southern District of Florida.

COMMON ALLEGATIONS

30.    McKnight, on behalf of Legisi Holdings and Legisi Marketing, raised money based on claims that he would invest the offering proceeds and then pay the investors each month from profits from the investments. McKnight represented that his investing activities generated monthly profits ranging from 15% to 18%, and McKnight promised to pay his investors returns of as much as 15% each month.

31.    In fact, McKnight and the Legisi entities were offering and selling securities and operating an obvious giant Ponzi scheme.

32.    There was not a valid registration statement filed or in effect with the SEC or any State's securities commission in connection with McKnight and Legisi's offer and sale of Legisi Program investment contracts, nor did the Legisi program investment contracts qualify under any exemption.  McKnight was not a registered representative or registered investment advisor.

33.    McKnight and Legisi asserted on the Legisi Website that the Legisi Program was a "loan program" through which investors would "loan" money to Legisi and, in return, Legisi would pay investors high rates of interest. However, it was obvious from reviewing the Legisi Program that it was a classic pooled investment vehicle in which investors invested money in a common venture with the expectation that the money would be used to generate profits for McKnight, Legisi and the investors solely through the efforts of McKnight and Legisi.  The Legisi Website offered Legisi Programs with interest rate returns ranging from 0.25% per day to 15% per month to be paid from profits generated by McKnight and Legisi's investments.

34.    McKnight represented on the Legisi website that his investments routinely generated a profit of 15% to 18% each month.

35.    In or about March 2007, Goddard, Lichtenstein and Bloom, who were then each employed by securities broker-dealer Sierra Equities, Ltd. ("Sierra") in Boca Raton, Florida, received a customer lead that Gregory McKnight was a wealthy investor in Swartz Creek, Michigan.

36.    At the time they received the customer lead, Goddard, Lichtenstein and Bloom were informed that McKnight had an internet business, Legisi.com, which was endorsed by the website mazu.com.

37.    Goddard, Lichtenstein and Bloom reviewed the Legisi.com website and mazu.com website. Goddard, Lichtenstein and Bloom also asked Bruce Rosetto, attorney for Sierra, to review the Legisi.com website.

38.    Having reviewed the Legisi.com website, Goddard, Lichtenstein, Bloom and Bruce Rosetto knew or should have known that Legisi was offering untenable rates of return to its "members" through the sale of unregistered securities and, therefore, knew or should have known that Legisi was operating a Ponzi scheme and offering and selling securities without being registered.

39.    In or about March 2007, Goddard and Lichtenstein traveled to Michigan to meet with McKnight. At that meeting, McKnight disclosed further details about the Legisi scheme.

40.    Through their review of the Legisi and Mazu websites and their meeting with McKnight in March 2007, Goddard and Lichtenstein knew of Legisi's need for investments having the characteristics of (a) rates of return at least commensurate with the high monthly returns promised by Legisi to its members; and (b) liquidity in order to re-pay Legisi members on demand.

41.    In spite of this knowledge, in or about March 2007, Sierra, through Goddard, Lichtenstein and Bloom, and with the advice of Bruce Rosetto, established a broker-customer relationship with Legisi.

42.    Sierra and its agents, who were also members of RP Management, solicited over $20 million from Legisi by promoting, touting and offering to sell investments and, upon

information and belief, reaped over $2 million in fees from investment issuers as a direct result of Legisi's purchase of securities from Sierra and issuers promoted by Sierra, Lichtenstein and Goddard.

43.    In Legisi, the Defendants recognized an opportunity to earn exorbitant fees and raise capital to start a real estate private equity fund.

44.    In April 2007, Royal Palm and RP Management were formed. Robert Rosetto was named as the manager of RP Management.

45.    At the time RP Management was formed, Robert Rosetto was 23 years of age and had no commercial real estate property management experience.

46.    In or about April 2007, Royal Palm appointed Sierra as its agent to promote and sell ownership units in Royal Palm.

47.    On or about May 9, 2007, Sierra and Royal Palm entered into a formal "Selling Agreement" dated as of April 9, 2007. The Selling Agreement is in the possession of the Defendants.

48.    Pursuant to the Selling Agreement, Royal Palm appointed Sierra as its agent to promote and sell units in Royal Palm to potential investors. Royal Palm contracted to pay Sierra a 10% commission on the aggregate gross proceeds generated by Sierra for the sale of Royal Palm securities, and a "non-accountable expense" in the amount of 3% of the aggregate gross proceeds generated by Sierra for the sale of Royal Palm securities.

49.    In or about April and/or May 2007, in connection with the offer and sale of the Royal Palm securities, Lichtenstein, as a registered representative of Sierra and a member of RP Management, affirmatively represented by telephone calls from Florida to McKnight in Michigan that: (a) Royal Palm would pay investors quarterly cash distributions at an annual rate of 8%; and (b) other Sierra clients either had invested or agreed to invest in Royal Palm (collectively, the "Royal Palm Sale Representations").

50.    The Royal Palm Sale Representations were false and material.

51.    At the time he made the Royal Palm Sale Representations, Lichtenstein was not licensed or registered to offer or sell securities in Michigan.

52.    In connection with the offer and sale of the Royal Palm securities, the Defendants omitted to state the following material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading: (a) the managers of Royal Palm had no experience in commercial real estate management; (b) the terms of the Selling Agreement between Royal Palm and Sierra where Sierra would receive 13% of Legisi's investment amount; (c) Goddard, Lichtenstein, and Bloom's conflict of interest due to their ownership interest in RP Management, the general partner of Royal Palm; (d) Robert Rosetto and Roxanne Rosetto's ownership interest in RP Management; (e) Robert Rosetto's relationship with Bruce Rosetto, the attorney for Royal Palm; (f) Bruce Rosetto's conflicts of interest relating to his representation of Royal Palm and Sierra, and the involvement of his son, Robert Rosetto, in Royal Palm; (g) RP Management would receive a 50% ownership interest in Royal Palm, without making any capital contribution; (h) that Legisi's investment would be tied up for 7

9

years; and (i) the drastic impact on the rate of return of fees and commissions, and the diversion

of profit to partners who made no capital contributions. In addition, except for the signature

page of a subscription agreement, none of the Defendants provided to Legisi any written

prospectus, private placement memorandum, or other materials describing the risks and other

details of an investment in Royal Palm (collectively, the "Royal Palm Sale Omissions").

53.     The Royal Palm Sale Omissions were material individually and collectively, in

that Legisi would not have purchased the Royal Palm Securities had the Royal Palm Sale

Omissions been disclosed.

54.     In reliance on the Royal Palm Sale Representations and Royal Palm Sale

Omissions, Legisi invested a total of $9,340,068.55 in Royal Palm.

55.     Legisi was the only investor in Royal Palm.

56.     Legisi made its investments in Royal Palm at various times from on or about May

7, 2007 through on or about June 19, 2007 (the "Transfers").

57.     The Transfers were made by interstate wire transfer either directly from Legisi or

via Legisi's accounts at Goldfinger Coin & Bullion, Inc., into Royal Palm's bank account or

accounts at Sun American Bank in Boca Raton, Florida, as follows:

| DATE | ORIGIN | AMOUNT |
|------|--------|--------|
| 5/7/2007 | WT From: LEGISI MARKETING INC/ | $1,000,000.07 |
| 5/18/2007 | WT From: LEGISI MARKETING INC/ | $ 500,000.17 |
| 5/23/2007 | WT From: LEGISI MARKETING INC/ | $ 250,000.23 |
| 5/24/2007 | WT From: GOLDFINGER COIN & BULLION INC/B96566 FFC | $ 334,005.10 |
| 5/25/2007 | WT From: GOLDFINGER COIN & BULLION INC/B75831 FFC | $ 334,005.10 |
| 5/29/2007 | WT From: GOLDFINGER COIN & BULLION INC/B75831 FFC | $ 334,005.11 |
| 5/29/2007 | WT From: GOLDFINGER COIN & BULLION INC/B96566 FFC | $ 334,005.11 |
| 5/29/2007 | WT From: GOLDFINGER COIN & BULLION INC/B75831 FFC | $ 334,005.23 |
| 5/30/2007 | WT From: GOLDFINGER COIN & BULLION INC/B75831 FFC | $ 150,005.19 |
| 5/30/2007 | WT From: GOLDFINGER COIN & BULLION INC/B75831 FFC | $ 150,005.22 |
| 5/30/2007 | WT From: GOLDFINGER COIN & BULLION INC/B75831 FFC | $ 334,005.24 |
| 5/31/2007 | WT From: GOLDFINGER COIN & BULLION INC/ | $ 150,005.22 |
| 6/1/2007 | WT From: GOLDFINGER COIN & BULLION INC/B96566 FFC | $ 334,005.23 |
| 6/5/2007 | WT From: GOLDFINGER COIN & BULLION INC/B96566 FFC | $ 334,005.24 |
| 6/5/2007 | LEGISI MARKETING INC/ | $ 500,000.05 |
| 6/6/2007 | WT From: GOLDFINGER COIN & BULLION INC/B96566 FFC | $ 334,005.29 |
| 6/6/2007 | LEGISI MARKETING INC/ | $ 500,000.06 |
| 6/8/2007 | WT From: GOLDFINGER COIN & BULLION INC/B96566 FFC | $ 334,005.25 |
| 6/12/2007 | LEGISI MARKETING INC/ | $1,500,000.12 |
| 6/13/2007 | LEGISI MARKETING INC/ | $ 800,000.13 |
| 6/19/2007 | LEGISI MARKETING INC/ | $ 500,000.19 |
|  | **TOTAL** | **$9,340,068.55** |

58.     The statutory safe harbor provided for forward looking statements under certain

circumstances does not apply to any of the representations and/or omissions alleged in this

Complaint.  Most of the specific statements pleaded herein were not identified as "forward

looking" statements "when made."  To the extent there were any forward looking statements,

there were no meaningful cautionary statements identifying important factors that could cause

actual results to differ materially from those in the purportedly forward looking statements.

Alternatively, to the extent the statutory safe harbor does apply to any forward looking

statements pleaded herein, Defendants are liable for those false forward looking statements

because at the time each of those forward looking statements was made, the particular speaker

knew that the particular forward looking statement was false.

## COUNT I – VIOLATIONS OF § 10(b) OF THE EXCHANGE ACT (15 U.S.C. §78j) AND RULE 10b-5 PROMULGATED THEREUNDER
### (against Royal Palm)

59.    Gordon incorporates the foregoing allegations.

60.    Royal Palm appointed Sierra its agent, and used members of RP Management, for the promotion and sale of securities in Royal Palm ("Royal Palm Securities").

61.    Through its agent, Sierra, and its other agents, Royal Palm carried out a planned scheme and course of conduct which was intended to and did (a) deceive Legisi and (b) cause Legisi to purchase the Royal Palm Securities.

62.    Through the Royal Palm Representations and Royal Palm Omissions, Royal Palm, through its agent, Sierra and its other agents: (a) employed devices, schemes and artifices to defraud, (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading, and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon Legisi in violation of § 10(b) of the Exchange Act and Rule 10b-5.

63.    Through the Royal Palm Representations and Royal Palm Omissions of its agent, Sierra, and its other agents, Royal Palm, directly and indirectly, by the use, means or instrumentalities of interstate commerce and of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business operations and future prospects of the Royal Palm Securities.

64.    Through the Royal Palm Representations and Royal Palm Omissions of its agent, Sierra, and its other agents, Royal Palm employed devices, schemes and artifices to defraud while in possession of material adverse non-public information and engaged in acts, practices and a course of conduct as alleged herein in an effort to assure Legisi of the value of the Royal Palm Securities' performance and continued substantial growth which included the making of, or the participation in the making of, untrue statements of material facts and omissions to state material facts necessary in order to make the statements made about the Royal Palm Securities, in the light of the circumstances under which they were made, not misleading, and engaged in practices and a course of business which operated as a fraud and deceit upon Legisi.

65.    Royal Palm's agent, Sierra, and its other agents, had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and disclose such facts, even though such facts were available to them.  Such material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the true value of the Royal Palm Securities and the artificially inflated prices of the Royal Palm Securities.  Royal Palm's agent, Sierra, and its other agents, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.  As a result of the dissemination of the materially false and misleading information and failure to disclose material facts as set forth above, the price of the Royal Palm Securities was artificially inflated.  In ignorance of the fact that the price of the Royal Palm Securities was artificially inflated and relying directly or indirectly on the false and misleading

statements made by Royal Palm's agent, Sierra, and its other agents, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants but not disclosed in statements by the Defendants, Legisi purchased the Royal Palm Securities at artificially high prices and was damaged.

66.     Legisi relied upon the Royal Palm Representations and Royal Palm Omissions, and was ignorant of their falsity and believed them to be true.  Had Legisi known the truth regarding the Royal Palm Securities, which was not disclosed by the Defendants, Legisi would not have purchased or otherwise acquired the Royal Palm Securities or if it had acquired such Securities it would not have done so at the artificially inflated prices which it paid.

67.     Royal Palm directly or indirectly controlled Sierra and its and RP Management's agents, Goddard, Lichtenstein and Bloom, acted in bad faith, and directly or indirectly induced the acts constituting the violations of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. 15 U.S.C. §78t.

## COUNT II – VIOLATION OF 15 U.S.C. §78t OF THE EXCHANGE ACT
### (applies to these Defendants RP Management, Royal Marketing, Bruce Rosetto, Robert Rosetto, Roxanne Rosetto, Goddard, Lichtenstein and Bloom)

68.     Gordon incorporates the foregoing allegations.

69.     RP Management, Royal Marketing, Robert Rosetto, Roxanne Rosetto, Bruce Rosetto, Goddard, Lichtenstein and Bloom acted as controlling persons of Royal Palm within the meaning of 15 U.S.C. §78t by directly and indirectly controlling Royal Palm and by virtue of their ownership and management of Royal Palm's operation.   These defendants controlled,

directly and indirectly, the management of Royal Palm and the sales activities and representations of Sierra and its agents, including the content and dissemination of the materially false statements and material omissions which gave rise to violations of §10(b) and Rule 10b-5.

70. RP Management, Royal Marketing, Robert Rosetto, Roxanne Rosetto, Bruce Rosetto, Goddard, Lichtenstein and Bloom are jointly and severally liable with and to the same extent as Royal Palm.

71. RP Management, Royal Marketing, Robert Rosetto, Roxanne Rosetto, Bruce Rosetto, Goddard, Lichtenstein and Bloom failed to act in good faith and directly or indirectly induced the acts constituting the violation of §10(b) and Rule 10b-5.

72. As a direct and proximate result of wrongful conduct of RP Management, Royal Marketing, Robert Rosetto, Roxanne Rosetto, Bruce Rosetto, Goddard, Lichtenstein and Bloom, the Receivership Estate has suffered damages in connection with Legisi's purchase of the Royal Palm Securities in the amount of $9,340,068.55 plus interest and costs.

73. Plaintiff tenders back the Royal Palm securities to RP Management, Royal Marketing, Robert Rosetto, Roxanne Rosetto, Bruce Rosetto, Goddard, Lichtenstein and Bloom.

74. By virtue of the foregoing, Royal Palm has violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

75. As a direct and proximate result of Royal Palm's wrongful conduct, the Receivership Estate has suffered damages in connection with Legisi's purchase of the Royal Palm Securities in the amount of $9,340,068.55, plus interest and costs.

76.    The Plaintiff tenders back the Royal Palm Securities to Royal Palm.

## COUNT III – VIOLATION OF MICHIGAN UNIFORM SECURITIES ACT
### (against Royal Palm, RP Management, Royal Marketing, Bruce Rosetto, Robert Rosetto, Roxanne Rosetto, Goddard, Lichtenstein and Bloom)

77.    Gordon incorporates the foregoing allegations.

78.    Through the Royal Palm Representations and Royal Palm Omissions made by its agent, Sierra, Royal Palm made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, Legisi not knowing of the untruth or omission, in violation of M.C.L. § 451.810(a)(2).

79.    Royal Palm's agent, Sierra, made the Royal Palm Sale Representations and Royal Palm Omissions with actual knowledge of the untruths and omissions, or acted with reckless disregard for the truth in that it failed to ascertain and disclose such facts, even though such facts were available to it.

80.    Lichtenstein was not registered to offer or sell securities in Michigan to Michigan residents.  At the time of the sale to Legisi, Lichtenstein, Goddard, Bloom and Sierra were aware that Lichtenstein was not licensed to sell securities in Michigan.

81.    Lichtenstein, Goddard and Bloom violated M.C.L. §451.810 which provides that any person who offers or sells a security in violation of §201(a) is liable to the person buying the security from him.  §201(a) provides that a person shall not transact business in the State of Michigan as a broker/dealer or agent, unless registered under this Act.  M.C.L.A. §451.601(a).

16

82.    RP Management, Royal Marketing, Robert Rosetto, Roxanne Rosetto, Bruce Rosetto, Goddard, Lichtenstein and Bloom materially aided in the sale to Legisi and are liable under M.C.L. §451.810(b). These defendants directly or indirectly controlled Royal Palm and its selling agent Sierra and are jointly and severally liable to the same extent as Royal Palm pursuant to M.C.L. §451.810(b).

83.    Legisi relied upon the Royal Palm Representations and Royal Palm Omissions, and was ignorant of their falsity and believed them to be true. Had Legisi known the truth regarding the Royal Palm Securities, which was not disclosed by Royal Palm or its agents, Legisi would not have purchased or otherwise acquired the Royal Palm Securities or if it had acquired such Securities it would not have done so at the artificially inflated prices which it paid.

84.    As a direct and proximate result of Defendants' violations of the Michigan Uniform Securities Act, the Receivership Estate has suffered damages in connection with Legisi's purchase of the Royal Palm Securities in the amount of $9,340,068.55, plus interest and costs.

85.    The Plaintiff tenders back the Royal Palm Securities to the Defendants.

## COUNT IV – VIOLATION OF FLORIDA SECURITIES TRANSACTIONS ACT
### (against Royal Palm, RP Management, Royal Marketing, Bruce Rosetto, Roxanne Rosetto and Robert Rosetto, Goddard, Lichtenstein and Bloom)

86.    Gordon incorporates the foregoing allegations.

87.    RP Management, Royal Marketing, Bruce Rosetto, Roxanne Rosetto, Robert Rosetto, Goddard, Lichtenstein and Bloom were issuers and promoters of Royal Palm securities

17

under Fla. Stat. §517.021(14) and RP Management, Royal Marketing, Bruce Rosetto, Roxanne Rosetto, Robert Rosetto, Goddard, Lichtenstein and Bloom were principals in Royal Palm by virtue of either being officers, partners, or persons with supervisory functions with respect to Royal Palm pursuant to Fla. Stat. §517.021(17).

88.    Goddard, Lichtenstein and Bloom were promoters of Royal Palm securities in connection with the founding or organizing of Royal Palm for the reason that they directly or indirectly received consideration for their services equal to 10% or more of the proceeds from the sale of any securities in Royal Palm. Fla. Stat. §517.021(18)(b).

89.    Royal Palm and the remaining Defendants, through the Royal Palm Representations of its agent, Sierra and its agents who were also members of RP Management, and its issuers, promoters and principals obtained money by means of untrue statements of fact, in violation of Fla. Stat. § 517.301.

90.    Royal Palm and the remaining Defendants, through the Royal Palm Omissions of its agent, Sierra, and its agents who were also members of RP Management obtained money by means of omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Fla. Stat. § 517.301.

91.    Royal Palm, through its agent, Sierra, and its agents who were also members of RP Management made the Royal Palm Sale Representations and Royal Palm Omissions with actual knowledge of the untruths and omissions, or acted with reckless disregard for the truth in

that they failed to ascertain and disclose such facts, even though such facts were available to them.

92.    Legisi relied upon the Royal Palm Representations and Royal Palm Omissions, and was ignorant of their falsity and believed them to be true. Had Legisi known the truth regarding the Royal Palm Securities, Legisi would not have purchased or otherwise acquired the Royal Palm Securities or if it had acquired such Securities it would not have done so at the artificially inflated prices which it paid.

93.    RP Management, Royal Marketing, Bruce Rosetto, Roxanne Rosetto, Robert Rosetto, Goddard, Lichtenstein and Bloom as partners or agents for Royal Palm personally participated or aided in making the sales of Royal Palm securities to Legisi and are jointly and severally liable to Legisi with Royal Palm. Royal Palm is liable as principal for the actions or omissions of its agents, RP Management, Royal Marketing, Bruce Rosetto, Roxanne Rosetto, Robert Rosetto, Goddard, Lichtenstein and Bloom.

94.    As a direct and proximate result of the foregoing violations of the Florida Securities Transactions Act, the Receivership Estate has suffered damages in connection with Legisi's purchase of the Royal Palm Securities in the amount of $9,340,068.55 plus interest and costs.

95.    The Plaintiff tenders back the Royal Palm Securities to the Defendants.

## COUNT V – COMMON LAW FRAUD
## (against Royal Palm, Lichtenstein and Goddard)

96.    Gordon incorporates the foregoing allegations.

97.    Royal Palm, through the Royal Palm Representations and Royal Palm Omissions of its agents Sierra, Lichtenstein and Goddard made material misrepresentations, and/or omitted to state material facts, to Legisi in order to induce Legisi to purchase the Royal Palm Securities.

98.    Royal Palm's agents, Sierra, Lichtenstein and Goddard knew that the Royal Palm Representations were false when they were made, or made the misrepresentations in reckless disregard of their truth and as positive assertions.

99.    Royal Palm's agents, Sierra, Lichtenstein and Goddard through the Royal Palm Omissions, omitted to disclose material facts from Legisi regarding the Royal Palm Securities, or at least recklessly failed to disclose such material facts.

100.    Legisi relied upon the misrepresentations and false impressions from the omissions and as a direct and proximate result of the fraudulent Royal Palm Representations and Royal Palm Omissions, the Receivership Estate has suffered damages in connection with Legisi's purchase of the Royal Palm Securities in the amount of $9,340,068.55, plus interest and costs.

## COUNT VI – INNOCENT MISREPRESENTATION
## (against Royal Palm, Lichtenstein and Goddard)

101.    Gordon incorporates the foregoing allegations.

102.    Royal Palm sold the Royal Palm Securities to Legisi through the material Royal Palm Representations and Royal Palm Omissions of its agents, Sierra, Lichtenstein and Goddard.

103.    The Royal Palm Representations and Royal Palm Omissions were made in connection with the making of contracts for the sale of the Royal Palm Securities to Legisi.

104.    The misrepresentations and omissions were false when made.

105.    Legisi relied on the false representations and grossly negligent omissions and would not have entered into the contracts if Royal Palm, Lichtenstein and Goddard had not made the misrepresentations and omissions.

106.    As a direct and proximate result of the foregoing wrongful conduct, the Receivership Estate has suffered damages in connection with Legisi entering into the contracts to purchase the Royal Palm Securities in the amount of $9,340,068.55, plus interest and costs.

107.    Royal Palm benefited from the damages suffered by the Receivership Estate.

### COUNT VII – UNJUST ENRICHMENT
**(against RP Management, Royal Marketing, Bruce Rosetto, Robert Rosetto, Roxanne Rosetto, Goddard, Lichtenstein and Bloom)**

108.    Gordon incorporates the foregoing allegations.

109.    RP Management is the general partner of Royal Palm.

110.    Legisi was the only entity that made any capital contribution to Royal Palm.

111.    At no time prior to Legisi's capital contributions did any of the Defendants

disclose to Legisi that RP Management would receive a 50% ownership interest in Royal Palm, without making any capital contribution, and over and above management and other fees charged or received by RP Management and its partners.

112.    Through its capital contributions, Legisi conferred a benefit on RP Management.

113.    Under the circumstances, it would be unjust for RP Management to retain the benefit of an ownership interest in Royal Palm.

114.    As a direct and proximate result of RP Management's unjust enrichment, the Receivership Estate has suffered damages.

115.    Equity requires that RP Management forfeit its ownership in Royal Palm to the Receivership Estate, or reimburse Legisi for one-half of its capital contribution.

116.    RP Management, Royal Marketing, Bruce Rosetto, Robert Rosetto, Roxanne Rosetto, Goddard, Lichtenstein and Bloom each directly or indirectly received management, professional, and other fees and benefits from the proceeds of Legisi's investments in Royal Palm.

117.    Under the circumstances, it would be unjust for RP Management, Royal Marketing, Bruce Rosetto, Robert Rosetto, Roxanne Rosetto, Goddard, Lichtenstein and Bloom to retain the fees and benefits derived from Legisi's investments in Royal Palm.

118.    Equity requires that RP Management, Royal Marketing, Bruce Rosetto, Robert Rosetto, Roxanne Rosetto, Goddard, Lichtenstein and Bloom disgorge any management fees,

professional fees, and other fees and benefits received from Royal Palm and Legisi.

119.    As a direct and proximate result of the unjust enrichment of RP Management, Royal Marketing, Bruce Rosetto, Robert Rosetto, Roxanne Rosetto, Goddard, Lichtenstein and Bloom, Legisi has sustained damages in excess of $75,000.00 including management fees, professional fees, other fees, and benefits received from Royal Palm and Legisi, and in such other respects as may be determined.

## COUNT VIII – AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO MICHIGAN UNIFORM FRAUDULENT CONVEYANCES ACT M.C.L. § 566.35(1) (against all Defendants)

120.    Gordon incorporates the foregoing allegations.

121.    In total, Legisi's Transfers totaled $9,340,068.55.

122.    Legisi was insolvent when the Transfers were made or became insolvent as a result of the Transfers.

123.    Legisi had investors and/or creditors at the time the Transfers were made.

124.    Legisi did not receive reasonably equivalent value for the Transfers.

125.    The Transfers were fraudulent as to Legisi investors and/or creditors.

126.    Each of the Defendants were transferees and/or mediate transferees of the Transfers.

127.    As a direct and proximate result of the Transfers, the Receivership Estate has suffered damages, in the amount of $9,340,068.55, plus interest and costs.

## COUNT IX – AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO MICHIGAN UNIFORM FRAUDULENT CONVEYANCES ACT M.C.L. § 566.34(1) (against all Defendants)

128.    Gordon incorporates the foregoing allegations.

129.    Legisi made the Transfers with actual intent to hinder, delay, or defraud its creditors and/or investors.

130.    Legisi did not receive reasonably equivalent value in exchange for the Transfers.

131.    Legisi was (i) engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, and/or (ii) intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

132.    As a direct and proximate result of the Transfers, the Receivership Estate has suffered damages.

WHEREFORE, Gordon requests the following relief:

A.    Rescission of Legisi's purchases of the Royal Palm Securities, and return of all consideration paid by Legisi or, alternatively, judgment for damages against the Defendants, jointly and severally, as may be proven;

B.    Interest on all sums invested at the legal rate;

C.    Costs;

D.    Reasonable attorney fees;

E.    Exemplary damages; and

F.    Such additional relief as may be determined.

Respectfully submitted,

CLARK HILL PLC

By:    /s/ Charles E. Murphy
        Charles E. Murphy
        151 S. Old Woodward Ave., Ste. 200
        Birmingham, MI 48009
        (248) 642-9692
        cmurphy@clarkhill.com
        Bar Number: P28909

        Edward J. Hood
        500 Woodward Avenue, Suite 3500
        Detroit, Michigan 48226-3435
        (313) 965-8300
        ehood@clarkhill.com
        Bar Number: P42953

*Attorneys for Robert D. Gordon, Receiver of the
Estates of Legisi Marketing, Inc., et al.*

Date: May 7, 2009

5854218.1 30711/122570