UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT D. GORDON, RECEIVER OF
LEGISI MARKETING, INC., GREGORY N.
MCKNIGHT AND LEGISI HOLDINGS,
LLC,

Case No. 09-11770

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

        Plaintiff,

v.

ROYAL PALM REAL ESTATE
INVESTMENT FUND I, LLLP, ET AL.,

        Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [106]**

This case concerns a receiver, appointed on behalf of a convicted Ponzi-schemer, who seeks to recover funds invested in an allegedly fraudulent investment scheme. From 2006 to 2008, Gregory McKnight operated a $72 million Ponzi scheme through his companies Legisi Marketing and Legisi Holdings. In 2007, McKnight and Legisi invested nearly $10 million in Defendant Royal Palm Real Estate Investment Fund, LLLP (the "Fund"). The entire investment was derived from funds obtained through the Legisi Ponzi scheme.

In May 2008, the SEC commenced an action against McKnight and Legisi in this District. Plaintiff Robert Gordon was appointed as the receiver of the estates of McKnight and Legisi.

Plaintiff maintains that Defendants, persons and entities involved in the management and formation of the Fund, engaged in a fraudulent scheme and made material misrepresentations in connection with the sale of securities to McKnight and Legisi. Plaintiff filed this action alleging federal securities claims and claims under Michigan and Florida law.

Before the Court is Defendants' Motion to Dismiss Second Amended Complaint [106] filed on December 11, 2017. The Motion is fully briefed. The Court held a hearing on the Motion on April 19, 2018. For the reasons explained below, the Motion is **GRANTED in part and DENIED in part**.

## FACTUAL BACKGROUND

### I. Legisi Ponzi Scheme

In December 2005, Gregory McKnight began offering and selling unregistered investment contracts in a pooled investment program called Legisi.com ("Legisi Program"). In February 2006, McKnight formed Legisi Holdings, LLC.[1] In January 2007, McKnight formed Legisi Marketing, Inc., a company used to hold and invest funds he received from investors.

Legisi was a Ponzi scheme which reported fictitious profits and used principal investments to pay other investors. Legisi promised returns ranging from

---

[1] The Legisi Program represented that it was a wholly-owned subsidiary of Legisi Holdings.

7.5% to 15% per month or 90% to 180% per year. By November 2007, Legisi had raised over $72 million from 3,000-5,000 investors.

## II. Royal Palm entities and Sierra

Defendants Bruce, Robert, and Roxanne Rosetto[2] are Florida residents involved in the formation and management of various business entities. The entities include the following Defendants: The Fund; Royal Palm Investment Management Company, LLC ("Management Company"); and Royal Marketing Services, LLC ("Royal Marketing").[3]

Bruce Rosetto was corporate and securities counsel for a separate entity, the Sierra Equity Group, LLC ("Sierra"). Former defendants in this action, Alan Goddard, Michael Lichtenstein, and Eric Bloom, were members of Sierra.

Beginning in late 2006, the Rosettos, along with Goddard, Lichtenstein, and Bloom, formed Royal Marketing. Bruce and Roxanne Rosetto are 50-50 members of Royal Marketing.

The Rosettos also formed the Management Company with Goddard, Lichtenstein, and Bloom, who are the Company's members. It is alleged that Bruce and Roxanne Rosetto are 25% members of the Management Company.

---

[2] Bruce and Roxanne are husband and wife. Robert is their son.
[3] Hereinafter, the Fund, the Management Company, and Royal Marketing may be referred to collectively as the "Royal Palm entities."

Plaintiff alleges, in detail, that the Rosetto Defendants, along with Goddard, Lichtenstein, and Bloom, carried out several interconnected investment schemes to defraud investors and operated a Ponzi scheme through the Royal Palm entities.

## III.    The Fund

In January 2007, the Rosettos and Goddard began to form the Fund, a limited liability limited partnership. The Fund's stated purpose was to contract for the purchase of homes and condominiums and to buy and sell real estate properties in Florida. The Management Company, a separate entity managed by Bruce Rosetto, was the General Partner of the Fund. Bruce Rosetto was responsible for creating the Fund and for day-to-day business decisions.

On March 14, 2007, Lichtenstein, on behalf of the Fund and other Royal Palm entities, called McKnight to offer and sell securities to him by phone. Plaintiff alleges that Lichtenstein promised high gains within a short period of time and made material omissions in connection with the offer and sale. By March 22, 2007, McKnight and Legisi committed to invest $5-10 million in the Fund. Between April and June 2007, Legisi invested a total of $9,440,068.55 in the Fund. All of the funds invested were derived from the Legisi Ponzi scheme.

On May 9, 2007, Sierra and the Fund entered into a Selling Agreement according to which Sierra became the Fund's selling agent.

On May 11, 2007, McKnight, on behalf of Legisi, signed the Partnership Agreement making Legisi Marketing the Fund's only limited partner.

On May 15, 2007, McKnight told Goddard, Lichtenstein, and Bloom that he and Legisi had been subpoenaed by Michigan's Office of Financial and Insurance Services. On May 25, 2007, the SEC subpoenaed McKnight and Legisi. Goddard, Lichtenstein, and Bloom referred McKnight to Sierra's attorney who agreed to represent McKnight. After he was subpoenaed, McKnight transferred nearly $7 million to the Fund.

In the months that followed, the Rosettos, and Goddard, Lichtenstein, and Bloom changed the terms of the Fund's Offering. Such changes were neither disclosed to McKnight nor Legisi. In October 2007, the final transaction documents were delivered to McKnight and Legisi.

## PROCEDURAL HISTORY

### I. Related Proceedings

#### A. SEC action and FINRA arbitration

On May 5, 2008, the SEC commenced an action alleging violations of various securities laws against McKnight and Legisi. *United States Securities and Exchange Commission v. McKnight, et al.*, No. 08-11887 (E.D. Mich. 2008) ("SEC Action"). The Court appointed Robert Gordon as the receiver for the estates of McKnight and Legisi Holdings.

On March 23, 2009, Plaintiff commenced a FINRA Action (No. 09-01690) against Goddard, Lichtenstein, and Bloom ("FINRA Respondents").[4] "The FINRA claims were premised on the FINRA Defendants' alleged misconduct in recommending certain investments to Legisi Marketing through McKnight, including the approximately $9.4 million that Legisi Marketing had invested in [the Fund]." [Dkt. #64 at 4]. The parties entered into arbitration. On March 20, 2015, Plaintiff and the FINRA Respondents reached a settlement.

On July 14, 2015, the Court, in the SEC Action, granted Plaintiff's Motion for Order Approving Settlement Resolving Claims Asserted in FINRA Arbitration. [Dkt. #627]. On January 9, 2016, the FINRA arbitration award became final. The SEC Action remains pending.

**B. Criminal proceedings against McKnight**

On February 14, 2012, the Government filed an Information charging McKnight with Wire Fraud. *United States v. McKnight*, No. 12-20101 (E.D. Mich. 2012). Pursuant to a Rule 11 Plea Agreement, McKnight pleaded guilty to Wire Fraud on February 16, 2012. On August 7, 2013, the Court sentenced McKnight to 15 years and 8 months of imprisonment and ordered him to pay $48.9 million in restitution. The Sixth Circuit affirmed McKnight's conviction on June 18, 2014. Neither party has provided the amount of restitution still owed to Legisi's victims.

---

[4] The Rosetto Defendants were not subject to FINRA's jurisdiction.

## II. The Instant Action

Plaintiff commenced this action on May 7, 2009. In the original complaint, Plaintiff named as Defendants: the Fund; the Management Company; Royal Marketing; Bruce, Robert, and Roxanne Rosetto; and the FINRA Respondents.

On March 8, 2011, the Court dismissed without prejudice the FINRA Respondents on the basis that the claims Plaintiff asserted against them were within the scope of the FINRA arbitration agreement. The Court stayed the action against the remaining Defendants pending resolution of the FINRA arbitration.

On December 9, 2016, the Court lifted the stay. On November 7, 2017, Plaintiff filed the Second Amended Complaint [101] ("Complaint") alleging: Violation of § 10(b) of the Securities Exchange Act and SEC Rule 10b-5 (Count I); Violation of § 78t of the Exchange Act (Count II); Violation of the Michigan Uniform Securities Act (Count III); Violation of the Florida Securities Transaction Act (Count IV); Breach of Partnership Agreement (Count V); Violation of Florida Revised Uniform Limited Partnership Act (Count VI); Common Law Breach of Fiduciary Duty (Count VII); Common Law Fraud (Count VIII); Innocent Misrepresentation (Count IX); Avoidance of Fraudulent Transfers Pursuant to M.C.L. § 566.35(1) (Count X); Avoidance of Fraudulent Transfers Pursuant to M.C.L. § 566.34(1) (Count XI); Aiding/Abetting Tortious Conduct (Count XII);

Tortious Interference with Contract (Count XIII); Silent Fraud (Count XIV); and Fraudulent Inducement (Count XV).

## LEGAL STANDARDS

Defendants move to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a Rule 12(b)(6) motion to dismiss, the Court must "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court must construe the complaint in the light most favorable to Plaintiff and draw all reasonable inferences in Plaintiff's favor. *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012).

Defendants also move to dismiss the Complaint for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1). *See Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) (internal citation and quotation marks omitted) ("Standing goes to [a c]ourt's subject matter jurisdiction[.]"). "[P]laintiff has the burden of proving jurisdiction in

order to survive the motion." *Mich. S. R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n., Inc.*, 287 F.3d 568, 573 (6th Cir. 2002).

ANALYSIS

## I. *In Pari Delicto*

In support of their argument for dismissal of nearly all of Plaintiff's claims, Defendants assert the *in pari delicto* defense.[5] "*In pari delicto* refers to the plaintiff's participation in the same wrongdoing as the defendant . . . . [it] is premised upon the equitable principle that [n]o Court will lend its aid to a man who founds his cause of action upon an immoral or illegal act." *In re Dublin Sec., Inc.*, 133 F.3d 377, 380 (6th Cir. 1997) (internal citations and quotation marks omitted). Resolution of this issue is appropriate on a motion to dismiss where the "defense is conclusively established on the face of the complaint." *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 604 F. Supp. 2d 1128, 1142 (S.D. Ohio 2009) (citing *Dublin*, 133 F.3d at 380).

Federal law governs the application of the *in pari delicto* defense to Plaintiff's federal securities claims. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985). State law governs the application of the defense to Plaintiff's state statutory and common law claims. *See, e.g.*, *Dublin*, 133 F.3d at 379 (applying Ohio law to the trustee's claims of negligence, breach of fiduciary

---

[5] Defendants do not assert the *in pari delicto* defense with respect to Counts X and XI of the Complaint.

duty, negligent misrepresentation, recklessness, common law fraud, and contribution).

## A. Federal securities claims (Counts I and II)

The *in pari delicto* defense is grounded in two premises: "first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Bateman Eichler*, 472 U.S. at 306. With respect to federal securities law violations, a claimant's private action for damages may be barred based on his own culpability where: "(1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public." *Id.* at 310-11.

To satisfy the first prong of *Bateman Eichler*, Plaintiff "must be an active, voluntary participant in the unlawful activity that is the subject of the suit." *Pinter v. Dahl*, 486 U.S. 622, 636 (1988). Under the second prong, Plaintiff may be barred from recovery "only if preclusion of suit does not offend the underlying statutory policies." *Id.* at 637-38. In other words, the Court should limit the application of the doctrine to the equitable purpose it serves. *McLemore v. Regions Bank*, 682 F.3d 414, 422 (6th Cir. 2012) (internal citation omitted).

Because a receiver stands in the shoes of the received entity or estate he represents, he is subject to the same claims and defenses as the entity or estate. *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (barring the receiver from recovery because of Liberte's unclean hands); *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 358 (3d Cir. 2001) (noting that the Sixth Circuit has applied the *in pari delicto* doctrine to "bar claims of a bankruptcy trustee, standing in the shoes of a debtor, against third-parties, without regard to the trustee's status as an innocent successor.").

Plaintiff does not dispute that as the appointed receiver of the estates of McKnight and Legisi, he may be subject to the *in pari delicto* defense. Rather, Plaintiff argues that Defendants have failed to satisfy *Bateman Eichler*. The Court disagrees with respect to the first prong, but agrees with respect to the second prong.

The Complaint conclusively establishes that McKnight and Legisi bear at least substantially equal responsibility for the violations Plaintiff seeks to redress. The investments made by McKnight and Legisi based on Defendants' alleged misrepresentations were derived entirely from Legisi's illegal Ponzi scheme. McKnight invested in the Fund in furtherance of the Legisi Ponzi scheme. Moreover, as the Fund's only limited partner, Legisi Marketing was an active, voluntary participant.

Nevertheless, the Court is concerned that preclusion of this suit may interfere with the effective enforcement of the securities laws and the protection of the investing public. Permitting parties who have plainly violated federal securities laws to evade liability for their actions strictly on the basis that another individual has engaged in similar conduct would thwart the purposes behind such laws. Furthermore, as Plaintiff noted, the SEC lacks the resources to enforce every securities fraud violation. Assuming *arguendo* that Complaint states a plausible claim for federal securities violations against Defendants, the effective enforcement of securities laws would be best served by allowing Plaintiff to proceed on his claims.

More importantly perhaps, precluding this action would not serve to protect the investing public. In making this determination, the Court considers who will actually benefit from an award of the money at issue. *See, e.g.*, *Bell v. Kaplan*, No. 3:14CV352, 2016 WL 815303, at *4 (W.D.N.C. Feb. 29, 2016) (declining to apply the *in pari delicto* defense where the only people hurt by its application were the victims of the Ponzi scheme); *Fine v. Sovereign Bank*, 634 F. Supp. 2d 126, 143 (D. Mass. 2008) (noting that because the ponzi-schemer's assets had already been liquidated to pay restitution in his criminal case, a discharge through a judgment against the defendant would not benefit him).

Any award Plaintiff receives in this case will be distributed to Legisi's defrauded investors. If the Court were to bar Plaintiff's claims, the real parties affected by such a ruling would be members of the investing public. Given such policy implications, the Court will not bar Plaintiff, who ultimately seeks relief for innocent investors, from pursuing federal securities claims.

**B. Michigan law claims (Counts III, VII, VIII, IX, XII, XIII, XIV, and XV)**

"Michigan law's wrongful-conduct rule incorporates the common-law *in pari delicto* maxim that 'as between parties *in pari delicto*, that is equally in the wrong, the law will not lend itself to afford relief to one as against the other, but will leave them as it finds them.'" *In re B & P Baird Holdings, Inc.*, 591 F. App'x 434, 441 (6th Cir. 2015) (quoting *Orzel by Orzel v. Scott Drug Co.*, 449 Mich. 550, 537 (1995)).

The wrongful-conduct rule, as distinguished from *Bateman Eichler*'s *in pari delicto* test, has two elements. First, "Plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal statute." *Orzel*, 449 Mich. at 561. Second, "a sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damages." *Id.* at 564. "To establish causation, a defendant must "show[] that the plaintiff's illegal conduct was a proximate cause of the plaintiff's injuries." *In re MuniVest Servs., LLC*, 500 B.R. 487, 495 (Bankr. E.D. Mich. 2013) (citing *Orzel*, 449 Mich. at 564).

It is undisputed that the first element of the wrongful-conduct rule is satisfied because McKnight's conduct in operating the Legisi Ponzi scheme was prohibited by criminal statute.

With respect to the second prong, the Court considers it beyond challenge that McKnight's conduct had a causal nexus to the alleged injuries because the funds at issue were wholly derived from the Legisi Ponzi scheme. *See id.* (noting that it was "beyond challenge that the Debtors' criminal conduct was the proximate cause of the injuries alleged by the Trustee" where the Debtors operated a Ponzi scheme). Plaintiff's argument that the Fund's scheme was independent of Legisi's scheme is unavailing – McKnight invested in the Fund in order to perpetrate the Legisi scheme. Moreover, Plaintiff cannot prove damages without referring to the money derived from the Legisi Ponzi scheme. *See Wellman v. Bank One, NA*, No. 253996, 2005 WL 2291741, at *3 (Mich. Ct. App. Sept. 20, 2005).

Absent from *Orzel*'s wrongful-conduct rule are the robust policy considerations animating the second prong of *Bateman Eichler*. This unfortunately leads to less than optimal results for Plaintiff. In its application of the wrongful-conduct rule, the Michigan Court of Appeals has expressly rejected concerns about the distribution of the potential award to innocent investors:

> Plaintiffs do raise an interesting point that the actual individual wrongdoers would not be benefiting from any recovery from defendants, but that the liquidating agent would disburse any recovery among plaintiffs' innocent investors. This is not an inconsequential

> point; indeed, it has served a role in many of the decisions cited by plaintiffs. Ultimately, however, we are not persuaded that it is one that should affect the application of the wrongful-conduct rule if the actions of the individual wrongdoers are imputed to plaintiffs.

*MCA Fin. Corp. v. Grant Thornton, L.L.P.*, 263 Mich. App. 152, 160–61, 687 N.W.2d 850, 855 (2004).

Moreover, the Bankruptcy Court in this District has similarly rejected such policy concerns, noting: "Even in a case like this, where the Debtors unquestionably operated a criminal Ponzi scheme, and where any recovery by the Trustee would go to the victims of that Ponzi scheme, this Court is still required to apply Michigan law as stated by the Michigan Supreme Court." *MuniVest*, 500 B.R. at 500. Accordingly, the Court construes *Orzel* and its progeny as requiring dismissal of Plaintiff's Michigan statutory and common law claims. Therefore, the Court grants Defendants' Motion [106] with respect to Counts III, VII, VIII, IX, XII, XIII, XIV, and XV.

### C. Florida law claims (Counts IV, IV, and V)[6]

Defendants erroneously submit that Florida has adopted Michigan's wrongful-conduct rule as set forth in *Orzel*. But, Florida uses a different test. The Florida Supreme Court recently explained that application of the *in pari delicto*

---

[6] Florida law applies to Plaintiff's claims under the Florida Securities and Investor Protection Act (Count IV) and Florida Revised Uniform Limited Partnership Act (Count VI). Additionally, Florida law applies to Plaintiff's claim for Breach of Partnership Agreement (Count V) because the Agreement provides for the application of Florida law.

defense requires that the parties: 1) "participate in the same wrongdoing;" and 2) "be equally at fault." *In Earth Trades, Inc. v. T & G Corp.*, 108 So. 3d 580, 583 (Fla. 2013) (internal citations omitted); *see also Adana Investing, Inc. v. Wells Fargo Bank, N.A.*, No. 1:16-CV-21562-UU, 2017 WL 3668553, at *15 (S.D. Fla. Apr. 10, 2017) (applying the standard set forth in *Earth Trades*). The Court cited to *Bateman Eichler* to clarify the doctrine, reaffirming that "[t]he defense of *in pari delicto* is not woodenly applied in every case where illegality appears somewhere in the transaction[.]" *Earth Trades*, 108 So. 3d at 583-84 (citing *Kulla v. E.F. Hutton & Co., Inc.*, 426 So.2d 1055, 1057 n. 1 (Fla. 3d DCA 1983)).

Additionally, in this context, Florida courts which have not cited to *Earth Trade* have applied the *in pari delicto* defense as set forth in *Bateman Eichler*. *See, e.g.*, *In re Rollaguard Sec., LLC*, 570 B.R. 859, 883 (Bankr. S.D. Fla.), *reconsideration denied,* 576 B.R. 260 (Bankr. S.D. Fla. 2017); *Pearlman v. Alexis*, No. 09-20865-CIV, 2009 WL 3161830, at *2 (S.D. Fla. Sept. 25, 2009).

Generally, courts applying Florida law on a motion to dismiss have declined to rule on the application of the *in pari delicto* defense as premature. *See, e.g.*, *Rollaguard*, 570 B.R. at 883; *In re Bernard L. Madoff Inv. Sec. LLC*, 557 B.R. 89, 123 (Bankr. S.D.N.Y. 2016), *reconsideration denied sub nom. Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. AP 08-01789 (SMB), 2016 WL

6088136 (Bankr. S.D.N.Y. Oct. 18, 2016); *Pearlman*, 2009 WL 3161830, at *2. The Court will do the same here.

At this stage, the Court cannot conclude that McKnight and Legisi "participated in the *same* wrongdoing" as Defendants. Accordingly, the Court denies Defendants' Motion to Dismiss Counts IV, V, and VI based on the *in pari delicto* defense.

## II. Failure to State a Claim for Securities Fraud

Section 10(b) of the Securities Exchange Act 1934 provides: "It is unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations . . . ." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976) (quoting 15 U.S.C. 78j).

SEC Rule 10b-5 makes it unlawful for a person, in connection with the purchase or sale of a security:

a) To employ any device, scheme, or artifice to defraud,

b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . or

c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person[.]

Furthermore, to support a control-persons claim under 15 U.S.C. § 78t, Plaintiff must sufficiently plead an underlying or primary securities law violation. *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1045 (6th Cir. 2016).

**A. Maker Liability – Section 10(b) and Rule 10b-5(b)**

"[T]o state a claim under Section 10(b) of the Securities Exchange Act of 1934, or under SEC Rule 10b–5, a plaintiff must allege: (1) a misrepresentation or omission; (2) of a material fact that the defendant had a duty to disclose; (3) made with scienter; (4) justifiably relied on by plaintiffs; and (5) proximately causing them injury." *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 668 (6th Cir. 2005); *see also In re Checkers Sec. Litig.*, 858 F. Supp. 1168, 1180 (M.D. Fla. 1994) ("The Florida statutory requirements are identical to Rule 10b–5, except that scienter requirement under Florida law is satisfied by a showing of mere negligence, whereas the minimum showing under Rule 10b–5 is reckless disregard.").

With respect to the first element –  a misrepresentation or omission – Plaintiff must allege that Defendants made an "untrue statement of a material fact in connection with the purchase or sale of securities." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011). "For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the

statement, including its content and whether and how to communicate it." *Id.* at 141-42.

Defendants argue that Plaintiff has failed to allege that any of the named Defendants made a misrepresentation to McKnight or Legisi upon which McKnight relied in purchasing interest in the Fund. Defendants contend that Plaintiff's allegation that Lichtenstein, who is no longer a party to this action, made material representations during the sale, is insufficient to support an action for securities fraud against the Rosettos or the Royal Palm entities.

Plaintiff, on the other hand, argues that Defendants are responsible for Lichtenstein's statements because they had the "intent and reasonable expectation" that such misrepresentations would be communicated to investors like McKnight and Legisi. Plaintiff further argues that because the Royal Palm entities were dominated by the Rosettos and the FINRA Respondents including Lichtenstein, Lichtenstein's alleged wrongdoing can be attributed to the Royal Palm entities.

However, the Supreme Court rejected this argument in *Janus*. 564 U.S. at 143 (explaining that suits against "entities that contribute 'substantial assistance' to the making of a statement but do not actually make it[,] may be brought by the SEC, but not by private parties."). Lichtenstein, not the Rosettos or the Royal Palm entities, made and had control over the statements during the sale. Notably, Sierra, the entity headed by the FINRA Respondents including Lichtenstein, did not

formally become the Fund's selling agent until May 9, 2007; this occurred nearly six weeks after the McKnight and Legisi agreed to invest $5-10 million in the Fund. Moreover, Bruce Rosetto did not direct Lichtenstein to offer and sell securities in the Fund until after the Legisi sale.

Because Lichtenstein is the party who made the alleged misrepresentations for purposes of §10(b) and Rule 10b-5, Plaintiff has failed to state a claim that Defendants made a misrepresentation or omission in connection with the sale of securities. Analysis of the remaining elements is unnecessary. Accordingly, the Court grants Defendants' Motion to Dismiss [106] with respect to Plaintiff's maker liability claims.

### B. Scheme Liability – Rule 10b-5(a) and (c)

The dismissal of Plaintiff's § 10(b) and 10b-5(b) claims is not fatal to Plaintiff's recovery. Under Rule 10b(a) and (c), individuals who participate in a scheme with the purpose and effect of misrepresenting material information in the connection with the sale of securities may be held liable in a private action. *See Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 128 (2008); *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 610 (6th Cir. 2005) (internal citation and quotation marks omitted) ("[A] defendant not liable under Rule 10b–5(b) for failure to disclose . . . may still be held liable under Rule 10b–5(a) and 10b–5(c) as a participant in [an] allegedly fraudulent scheme."); *see*

*also S.E.C. v. Wealth Strategy Partners, LC*, No. 8:14-CV-02427-T, 2015 WL 3603621, at *8 (M.D. Fla. June 5, 2015) (denying defendants' motion to dismiss plaintiff's scheme liability claim).

"To state a claim based on conduct that violates Rule 10b-5(a) and (c), [a] plaintiff must allege that a defendant[:] (1) committed a deceptive or manipulative act, (2) with scienter, that (3) the act affected the market for securities or was otherwise in connection with their purchase or sale, and that (4) defendants' actions caused the plaintiffs' injuries." *Kerrigan v. Visalus, Inc.*, No. 14-CV-12693, 2016 WL 892804, at *15 (E.D. Mich. Mar. 9, 2016) (internal citation and quotation marks omitted). Plaintiff need not allege a misstatement or omission to succeed on a 10b–5(a) or (c) claim. *JAC Holding Enterprises, Inc. v. Atrium Capital Partners*, LLC, 997 F. Supp. 2d 710, 734 (E.D. Mich. 2014) (internal citation and quotation marks omitted).

The Complaint states a plausible claim that the Rosettos and the Royal Palm entities participated in a scheme to defraud McKnight and Legisi. Defendants' actions leading up to the sale, including the formation of separate Royal Palm entities and other investment schemes, were taken "in connection with" the Fund sale. Moreover, the allegations that the Rosettos and Royal Palm entities changed the terms of the Offering to dramatically affect potential returns after the sale further support Plaintiff's claim that Defendants engaged in deceptive and

manipulative conduct. Consequently, the Court denies Defendants' Motion to Dismiss [106] with respect to Plaintiff's scheme liability claims.

### III. Standing to Pursue Michigan Avoidance of Fraudulent Transfers Claims (Counts X and XI)

Defendants argue that Plaintiff lacks standing to bring avoidance of fraudulent transfers claims. M.C.L. §§ 566.34 and 566.35 confer standing on creditors who seek to void transfers made, or obligations incurred, by debtors. Defendants maintain that Plaintiff, who stands in the shoes of McKnight and Legisi, is not a creditor of Legisi and McKnight, and therefore cannot bring claims pursuant to Michigan's statutory provisions.

A receiver has standing to bring a claim if at least one of the receivership entities would have had standing to bring the claim. *Wuliger*, 567 F.3d at 794 (6th Cir. 2009). Because Legisi, one of the receivership entities would have had standing to bring avoidance of fraudulent transfer claims, Plaintiff has standing to bring such claims. *See Coppola v. Manning*, No. 323994, 2015 WL 7288050, at *5 (Mich. Ct. App. Nov. 17, 2015) (noting that the receiver "had standing to pursue lawsuits on behalf of ReCellular for the purpose of protecting the receivership estate[.]").

In addition, several other circuits have explicitly held that a receiver in a Ponzi scheme case may be considered a creditor for purposes of standing. *See Evans v. Burrell*, No. CV 14-330-GFVT, 2015 WL 5772414, at *6 (E.D. Ky. Sept.

30, 2015) (citing *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 192 (5th Cir. 2013); *Wing v. Dockstader*, 482 F. App'x 361, 363 (10th Cir. 2012); *Donnell v. Kowell*, 533 F.3d 762, 777 (9th Cir. 2008); *Scholes v. Lehmann*, 56 F. 3d 753-55 (7th Cir. 1995)). Accordingly, the Court rejects Defendants' argument that Plaintiff lacks standing to pursue avoidance of fraudulent transfers claims on behalf of the receivership.

## IV. Failure to State a Claim for Breach of Partnership Agreement and Violation of the Florida Revised Limited Partnership Act

Defendants argue that Plaintiff cannot hold Defendants other than the Management Company liable for breach of the Partnership Agreement, or for violating Florida's Revised Uniform Limited Partnership Act, because they were neither parties to the Agreement nor partners in the Fund.

Plaintiff argues that Florida's Revised Uniform Limited Partnership Act, F.S. § 620.2001(1),[7] authorizes him to bring a direct action for breach of the Partnership Agreement against all Defendants. This argument is without merit. Section 620.2001 authorizes a limited partner to maintain an action against a general partner – it does not authorize a limited partner to maintain an action against any person or entity that conducts business with the general partner.

---

[7] Section 620.2001 provides: "[A] partner may maintain a direct action against . . . another partner for legal or equitable relief . . . to enforce the rights and otherwise protect the interests of the partner, including rights and interests under the partnership agreement."

Furthermore, Plaintiff has failed to allege that the Rosettos or Royal Marketing were parties or signatories to the Agreement.

Nonetheless, the remaining Defendants may be liable for the Management Company's conduct under a corporate veil piercing theory. To state a claim for piercing the corporate veil, Plaintiff must allege:

(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation;

(2) the corporate form must have been organized or used for a fraudulent or improper purpose; and

(3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*S-Fer Int'l, Inc. v. Stonesheets, LLC*, No. 14-24662-CIV, 2016 WL 8808749, at *3 (S.D. Fla. July 22, 2016).

Although Bruce Rosetto, a managing member of the Management Company did not personally breach the Partnership Agreement, he may be held personally liable under a veil piercing theory. *See Hudson & Keyse, LLC v. Goldberg & Assocs., LLC*, No. 07-81047-CIV, 2009 WL 790115, at *3 (S.D. Fla. Mar. 24, 2009). The allegations in Complaint, as a whole, sufficiently state a plausible claim that Bruce Rosetto dominated and controlled the Management Company to such an extent that its independent existence was non-existent. *See* ¶¶ 43; 82-83; 107; 113-14; 199. However, such allegations are not sufficiently pled with respect to Robert

and Roxanne Rosetto. Accordingly, Counts V and VI are dismissed as to Royal Marketing and Robert and Roxanne Rosetto only.

In the sections below, the Court assesses Defendants' alternative grounds for dismissal as they relate to the Management Company and Bruce Rosetto.

**A. Breach of Partnership Agreement (Count V)**

Where a partnership is established by written agreement, either party may bring an action for breach of the agreement. *Anthony Distributors, Inc. v. Miller Brewing Co.*, 882 F. Supp. 1024, 1031 (M.D. Fla. 1995) (internal citation omitted).

Relevant for purposes of this Motion are the following Agreement provisions:

> Section 5.01: The General Partner shall have the exclusive right and responsibility to manage the business of the Partnership and is hereby authorized to take any action of any kind and to do anything and everything the General Partner deems necessary in connection therewith . . . . the General Partner is authorized and empowered . . . to: (a) enter into, execute, maintain and/or terminate contracts, undertakings, agreements . . . in the name of the Partnership . . . and do or perform all such things as may be necessary or advisable in furtherance of the Partnership's powers.

> Section 5.02: [T]he General Partner shall use commercially reasonable efforts, as determined in the sole discretion of the General Partner, to ensure that any contract or agreement with any Affiliate is on terms that are fair relative to general industry standards[.]

> Section 10.01(a): Each partner represents and warrants that it is duly organized or formed, validly existing, and in good standing under the laws of the jurisdiction of its incorporation[.]

Defendants argue that Plaintiff cannot succeed on his breach of contract claim because Legisi Marketing committed the first material breach of the Agreement when it falsely represented it was a valid and legitimate entity in violation of § 10.01(a). But, this defense is unavailable where the party "fails to declare a breach of contract" and "continues to perform under the contract after learning of the breach." *Acosta v. Dist. Bd. of Trustees of Miami-Dade Cmty. Coll.*, 905 So. 2d 226, 229 (Fla. Dist. Ct. App. 2005) (internal citation and quotation marks omitted). Here, Defendants did not treat Legisi's misrepresentation as a discharge of their duties under the Agreement. Instead, they continued to act under the Agreement, and to receive investments, despite having been aware that McKnight and Legisi were under investigation by the Office of Financial and Insurance Services and the SEC.[8]

Having rejected Defendants' first material breach defense, the Court finds that Plaintiff has stated a claim for breach of §§ 5.01 and 5.02. Plaintiff alleges that Defendants breached the Agreement by "secretly chang[ing] material terms" and

---

[8] Given that the parties likely misrepresented their statuses as legitimate entities in executing the Agreement, there may be a question as to its validity. *See Umbel v. Foodtrader.com, Inc.*, 820 So. 2d 372, 374 (Fla. Dist. Ct. App. 2002) ("[I]t must be held that as a matter of law any contract made in violation of [the Act's] terms, provisions or requirements is void and confers no enforceable rights on the contracting parties."); *Frye v. Taylor*, 263 So. 2d 835, 840 (Fla. Dist. Ct. App. 1972) (noting that courts "should be loathe to lend their support to or give approval to any obligation which has an unlawful transaction as its genesis."). Because this issue was not raised in Defendants' Motion, the Court does not address it in this Order.

entering into transactions "which were not fair or commercially reasonable." Compl. at ¶ 191. Plaintiff further alleges that Defendants' self-dealing loans and gift transactions violated the Agreement, which restricted loans to the purchase to real estate. *Id.* at ¶ 134. Accordingly, the Court denies Defendants' Motion to Dismiss Count V.

### B. Breach of Fiduciary Duties Under § 620.1408 (Count VI)

Section 620.1408 provides that a general partner owes duties of care and loyalty to its limited partners. Plaintiff alleges that the Management Company, and its agents, breached its fiduciary duty of loyalty by:

> secretly changing the material terms of the Partnership Agreement, by entering transactions with the affiliated entities, where the affiliated entities had interests adverse to the Partnership and the Partnership's sole limited partner, Legisi, and by diverting business opportunities and assets from the Investment Fund.

Compl. at ¶ 202.

Plaintiff further alleges that the Management Company, and its agents, breached its duty of care by:

> causing the [Fund] to enter commercially unreasonable and unfair affiliated transactions, and by failing to disclose the increased array of fees, commissions, and profits Defendants extracted from the [Fund,] to the detriment of the partnership's sole limited partner, Legisi Marketing.

*Id.* at ¶ 203.

The pleadings support a plausible claim that the Management Company and Bruce Rosetto breached their duty of care by engaging in self-dealing in pursuit of interests adverse to the Fund and Legisi Marketing. *See Carolina Pres. Partners, Inc. v. Wolf Arbin Weinhold*, 414 B.R. 754, 763 (M.D. Fla. 2009). The pleadings further support a claim that the use of Legisi's investment to purchase and fund other companies was intentional misconduct in breach of the duty of care. Therefore, the Court denies Defendants' Motion to Dismiss Count VI.

## CONCLUSION

For the reasons stated above, and incorporating the reasons stated on the record, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss [106]. This ruling has the effect of dismissing: Plaintiff's maker liability claims set forth in Counts I, II, and IV against all named Defendants; Counts III, VII, VIII, IX, XII, XIII, XIV, and XV against all named Defendants; and Counts V and VI against Defendants Royal Marketing Services, Inc., Robert Rosetto, and Roxanne Rosetto only.

Remaining in this action are: Plaintiff's scheme liability claims set forth in Counts I, II, and IV against all named Defendants; Counts V and VI against Defendants Bruce Rosetto and Royal Palm Investment Management Company only; and Counts X and XI against all Defendants.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss [106] is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Counts III, VII, VIII, IX, XII, XIII, XIV, and XV of the Second Amended Complaint are **DISMISSED**.

**IT IS FURTHER ORDERED** that Counts V and VI of the Second Amended Complaint are **DISMISSED** as to Defendants Royal Marketing Services, Inc., Robert Rosetto, and Roxanne Rosetto only.

**SO ORDERED**.


                                           s/Arthur J. Tarnow
                                           Arthur J. Tarnow
Dated: May 25, 2018                   Senior United States District Judge