UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT D. GORDON, RECEIVER OF
LEGISI MARKETING, INC., GREGORY N.
MCKNIGHT AND LEGISI HOLDINGS,
LLC,

        Plaintiff,

        v.

ROYAL PALM REAL ESTATE
INVESTMENT FUND I, LLLP, ET AL.,

        Defendants.

_____/

Case No. 09-11770

SENIOR U. S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR RECONSIDERATION [166]**

This case concerns a receiver, appointed on behalf of a convicted Ponzi-schemer, who seeks to recover funds invested in an allegedly fraudulent investment scheme. From 2006 to 2008, Gregory McKnight operated a $72 million Ponzi scheme through his companies Legisi Marketing, Inc. and Legisi Holdings, LLC ("Legisi Companies"). In 2007, McKnight and the Legisi Companies invested nearly $10 million in Defendant Royal Palm Real Estate Investment Fund, LLLP (the

"Fund"). The entire investment was derived from funds obtained through the Legisi Ponzi scheme.

In May 2008, the Securities Exchange Commission ("SEC") commenced an action against McKnight and Legisi in this District. *Gordon v. Mazu Publishing,Inc.*, Case No 09-13953; *Sec. and Exch. Comm. v. Gagnon*, Case No.10-11891. Plaintiff Robert Gordon was then appointed as the receiver of the estates of McKnight and Legisi. Plaintiff maintains that Defendants, persons and entities involved in the management and formation of the Fund, engaged in a fraudulent scheme and made material misrepresentations in connection with the sale of securities to McKnight and Legisi. Plaintiff filed this action alleging federal securities claims and claims under Michigan and Florida law.

On May 31, 2020, the Court denied Plaintiff's Motion for Partial Summary Judgment [150] and granted Defendants' Motion for Summary Judgment [153] on, *inter alia*, Plaintiff's Violation of Florida Revised Uniform Limited Partnership Act (Count VI) claim against Defendants Bruce Rosetto and Royal Palm Investment Management Company. Before the Court is Plaintiff's Motion for Reconsideration [166] filed on June 12, 2020. Defendants filed a Response [168] on August 17, 2020. For the reasons explained below, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion for Reconsideration [166].

## FACTUAL BACKGROUND

### I.     Legisi Ponzi Scheme

In December 2005, Gregory McKnight began offering and selling unregistered investment contracts in a pooled investment program called Legisi.com ("Legisi Program"). In February 2006, McKnight formed Legisi Holdings, LLC.[1] In January 2007, McKnight formed Legisi Marketing, Inc., a company used to hold and invest funds he received from investors.

Legisi was a Ponzi scheme which reported fictitious profits and used principal investments to pay other investors. Legisi promised returns ranging from 7.5% to 15% per month or 90% to 180% per year. (ECF No. 153-30). By November 2007, Legisi had raised over $72 million from 3,000-5,000 investors. (*Id.*).

### II.    Royal Palm entities and Sierra

Defendants Bruce, Robert, and Roxanne Rosetto[2] are Florida residents involved in the formation and management of various business entities. The entities include the following Defendants: The Fund; Royal Palm Investment Management

---

[1] The Legisi Program represented that it was a wholly-owned subsidiary of Legisi Holdings.
[2] Bruce and Roxanne are husband and wife. Robert is their son.

Company, LLC ("Management Company"); and Royal Marketing Services, LLC ("Royal Marketing").³

Bruce Rosetto was corporate and securities counsel for a separate entity, the Sierra Equity Group, LLC ("Sierra"). Former defendants in this action, Alan Goddard, Michael Lichtenstein, and Eric Bloom, were members of Sierra.

Beginning in late 2006, the Rosettos, along with Goddard, Lichtenstein, and Bloom, formed Royal Marketing. Bruce and Roxanne Rosetto are 50-50 members of Royal Marketing. (ECF No. 158-18).

The Rosettos also formed the Management Company with Goddard, Lichtenstein, and Bloom, who are the Company's members. (ECF No. 159-7). It is alleged that Bruce and Roxanne Rosetto are 25% members of the Management Company.

Plaintiff alleges that the Rosetto Defendants, along with Goddard, Lichtenstein, and Bloom, carried out several interconnected investment schemes to defraud investors and operated a Ponzi scheme through the Royal Palm entities. (ECF No. 158, PageID. 6129-6137).

---

³ Hereinafter, the Fund, the Management Company, and Royal Marketing may be referred to collectively as the "Royal Palm entities."

### III. The Fund

In January 2007, the Rosettos and Goddard began to form the Fund. The Fund's stated purpose was to buy and sell real estate properties in Florida, mostly homes and condominiums. (ECF No. 153-27). The Management Company, a separate entity managed by Bruce Rosetto, was the General Partner of the Fund. Bruce Rosetto was responsible for creating the Fund and for day-to-day business decisions.

On March 14, 2007, Lichtenstein, on behalf of the Fund and other Royal Palm entities, called McKnight to offer and sell securities to him by phone. Plaintiff alleges that Lichtenstein promised high gains within a short period of time and made material omissions in connection with the offer and sale. Specifically, Mr. McKnight was promised an 8% annual return to be paid quarterly. (ECF No. 153-4). By March 22, 2007, McKnight and Legisi committed to invest $5-10 million in the Fund. (*Id.*) Between April and June 2007, Legisi invested a total of $9,440,068.55 in the Fund. Compl. ¶ 93, 94. All of the funds invested were derived from the Legisi Ponzi scheme.

On May 9, 2007, Sierra and the Fund entered into a Selling Agreement according to which Sierra became the Fund's selling agent. Compl. ¶ 57. On May

11, 2007, McKnight, on behalf of Legisi, signed the Partnership Agreement making Legisi Marketing the Fund's only limited partner. Compl. ¶ 97.

On May 15, 2007, McKnight told Goddard, Lichtenstein, and Bloom that he and Legisi had been subpoenaed by Michigan's Office of Financial and Insurance Services. (ECF No. 158-8, PageID. 6361). On May 25, 2007, the SEC subpoenaed McKnight and Legisi. Goddard, Lichtenstein, and Bloom referred McKnight to Sierra's attorney who agreed to represent McKnight. (*Id.*) After he was subpoenaed, McKnight transferred nearly $7 million to the Fund.

In the months that followed, the Rosettos, and Goddard, Lichtenstein, and Bloom changed the terms of the Fund's Offering. (ECF No. 158, PageID. 6133-37). Plaintiff claims that such changes were neither disclosed to McKnight nor Legisi. (*Id.*). Plaintiff also claims that Mr. McKnight did not receive the following disclosures before investing the Fund: loan payments to Sunrise Catering (a business acquired with a property the Fund purchased), Roxanne and Robert Rosetto's lack of property management experience, and a change to the 8% yearly return he was verbally promised. (*Id.*) In October 2007, the final transaction documents were delivered to McKnight and Legisi upon his request. (*Id.*) Mcknight claims that if he had known all this information beforehand, he would not have invested, however, upon receiving these disclosures he did not object or express any concerns. (ECF

No. 158-8, PageID. 6386). The Fund ultimately bought three commercial properties which were managed by the Rosetto family. (ECF No. 159-32, PageID. 7277). In spring of 2008, while investigating Legisi, the SEC froze Legisi's assets and effectively ended the Fund's investments. (ECF No. 159-68).

## LEGAL STANDARDS

Plaintiff has filed a Motion for Reconsideration [166] pursuant to E.D. Mich. 7.1 (h). In order to grant such a motion, the movant must "not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. 7.1 (h)(3). Further, it "may generally be granted for three reasons: (1) an intervening change in the law; (2) evidence not previously available has become available; or (3) the necessity to correct a clear error of law or prevent manifest injustice." *DirecTV, Inc. v. Karpinsky*, 274 F. Supp. 2d 918, 920-21 (E.D. Mich. 2003).

## ANALYSIS

Plaintiff argues that the Court erred in concluding that Florida statutory duties govern only "[t]o the extent the partnership agreement does not otherwise provide." Fla. Stat. § 620.1110. Specifically, Plaintiff asserts that this conclusion amounted to

a palpable defect, because partnership agreement terms cannot waive statutory duties. The Court agrees.

Under FLA. STAT. § 620.1110, a partnership agreement may not "[e]liminate the duty of loyalty of a general partner . . . [u]nreasonably reduce the duty of care of a general partner . . . [e]liminate the obligation of good faith and fair dealing." Therefore, despite any provision in the Partnership Agreement, the Management Company, Royal Marketing Services, Robert Rosetto, Roxanne Rosetto, and Bruce Rosetto owed to Legisi and McKnight a statutory duty of care, FLA. STAT. § 620.1408 (3), a statutory duty of good faith and fair dealing, FLA. STAT. § 620.1110(2)(g), and a statutory duty of loyalty, Fla. Stat. § 620.1110(2)(e), and FLA. STAT. § 620.1408.

"A general partner's duty of care to the limited partnership and the other partners in the conduct and winding up of the limited partnership's activities is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." FLA. STAT. § 620.1408 (3).

"A general partner shall discharge the duties to the partnership and the other partners under this act or under the partnership agreement and exercise any rights consistently with the obligation of good faith and fair dealing." Fla. Stat. Ann. § 620.1408 (4)(5). However, "[a] general partner does not violate a duty or obligation

under this act or under the partnership agreement merely because the general partner's conduct furthers the general partner's own interest." *Id.*

"A general partner's duty of loyalty to the limited partnership and the other partners is limited to the following: (a) To account to the limited partnership and hold as trustee for it any property, profit, or benefit derived by the general partner in the conduct and winding up of the limited partnership's activities or derived from a use by the general partner of limited partnership property, including the appropriation of a limited partnership opportunity. (b) To refrain from dealing with the limited partnership in the conduct or winding up of the limited partnership's activities as or on behalf of a party having an interest adverse to the limited partnership. (c) To refrain from competing with the limited partnership in the conduct of the limited partnership's activities." FLA. STAT. § 620.1408 (2).

Plaintiff argues that Defendants breached their duties by engaging in four categories of improper transfers totaling $401,227: (1) making payments to Bruce Rossetto's law firm for fees and costs allegedly unrelated to the Fund ($73,561) (2) the Fund's payment to Rosetto & Associates ($8,123) (3) the Fund's loans to Sunrise Catering ($180,000) and (4) the Fund's transfers to the Realty Fund II ($139,543).

Plaintiff has presented a genuine dispute of fact as to whether these activities breached the duties of a general partner by failing to disclose to disclose material

facts to Mcknight such as the fact that Sunrise Catering was owned by the Rosettos and initiating unexplained transfers to separate entities. *See* (ECF No. 150 PageID.3876-78). Plaintiff has further presented a genuine dispute of fact as to whether Bruce Rosetto dominated the Management Company's operations such that piercing the corporate veil would be appropriate.

"Generally, the rule is that the corporate veil will not be pierced absent a showing of improper conduct . . . [w]hether there has been improper conduct is a jury question." *Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. Dist. Ct. App. 1998) (citing *Dania Jai–Alai Palace, Inc. v. Sykes,* 450 So.2d 1114, 1121 (Fla.1984)). "Three factors must be proven by a preponderance of the evidence: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *Id.*

Here, the Court finds that Plaintiff has presented sufficient evidence that Bruce Rosetto was the driving force behind the Company's operations while his wife and son were merely nominal owners such that a jury may decide if his conduct was sufficiently improper to hold him liable. See (ECF No. 150, PageID.3874-75).

Therefore, the Court denies summary judgment to both Plaintiff and Defendants on this claim.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Reconsideration [166] is **GRANTED in part and DENIED in part**.

**SO ORDERED**.

|  |  |
|---|---|
|  | a/Arthur J. Tarnow |
|  | Arthur J. Tarnow |
| Dated: March 31, 2021 | Senior United States District Judge |