UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT D. GORDON, Receiver of
Legisi Marketing, Inc., Gregory N.
McKnight, and Legisi Holdings, LLC,

    Plaintiff,

v.

ROYAL PALM REAL ESTATE
INVESTMENT FUND I, LLLP, et al.,

    Defendants.
_____/

Case No. 09-11770
Honorable Victoria A. Roberts

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE IRRELEVANT EXPERT WITNESS TESTIMONY [ECF No. 179]

**I.    INTRODUCTION**

Before the Court is Defendants' motion *in limine* to exclude irrelevant expert witness testimony [ECF No. 179]. No hearing is necessary.

For the reasons below, the Court **GRANTS** the motion **IN PART** and **DENIES** it **IN PART**.

**II.    BACKGROUND**

This case arises from funds transferred for investment in a real estate investment fund organized and operated by Defendants. The investment was made with funds transferred by Gregory McKnight – the operator of an

illegal investment/Ponzi scheme called "Legisi" – with money derived from Legisi. Sierra Equity Group ("Sierra") was the broker-dealer that coordinated the investment between McKnight/Legisi and Defendants. Law enforcement shut down the Legisi scheme shortly after McKnight/Legisi invested in Defendants' real estate fund.

The Court appointed Plaintiff, Robert Gordon, as the receiver for the estates of McKnight and Legisi. As receiver, Plaintiff took possession of Legisi's assets, liquidated them, and paid restitution to victims of the Legisi Ponzi scheme.

Plaintiff brings this action against Bruce Rosetto, Roxanne Rosetto, Robert Rosetto, and several entities owned and/or controlled by the Rosettos. Bruce and Roxanne are married; Robert is their son.

Plaintiff seeks to recover the funds McKnight/Legisi transferred to Defendants for the allegedly fraudulent real estate investment fund. Plaintiff alleges Defendants knew or should have known that the money McKnight/Legisi transferred to the real estate investment fund were derived from an illegal investment scheme and, therefore, Defendants should not have accepted them. Plaintiff also alleges that the Defendants are liable for improper use of the funds invested by McKnight/Legisi – including

payments to invest in Defendants' other businesses and for professional fees that were unrelated to the real estate investment fund.

Four claims remain: (1) Breach of Partnership Agreement (Count V); (2) Violation of Florida Revised Uniform Limited Partnership Act (Count VI); (3) Avoidance of Fraudulent Transfers, M.C.L. § 566.35(1) (Count X); and (4) Avoidance of Fraudulent Transfers, M.C.L. § 566.34(1) (Count XI). Counts V and VI are against Bruce Rosetto and Royal Palm Investment Management Company only. Plaintiff seeks to hold Bruce Rosetto personally liable on a veil-piercing theory under all four remaining claims.

The Defendants deny liability and contend they did nothing wrong. They claim the illegal source of the funds was hidden from them and the actions they took were authorized by the partnership agreement to further the interests of the real estate investment fund.

Trial is scheduled to begin May 24, 2022.

Plaintiff intends to call Charles Porten ("Porten") as an expert on investments/investing, the securities industry, and real estate hedge funds.

### III.   LEGAL STANDARD

A motion *in limine* refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). The

purpose of these motions is "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).

The Court may exclude evidence on a motion *in limine* "only when [the] evidence is determined to be clearly inadmissible on all potential grounds." *United States v. Anderson*, ---- F.Supp.3d ----, 2021 WL 4427251, at *2 (E.D. Mich. Sept. 27, 2021). If the Court cannot determine whether evidence is clearly inadmissible on all grounds, it should defer evidentiary rulings until trial so that questions of foundation, relevancy, and potential prejudice can be resolved in the proper context. *Id*. The Court should rarely grant a motion *in limine* which "exclude[s] broad categories of evidence." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). The "better practice is to deal with questions of admissibility when they arise." *Id*.

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if evidence is relevant, the Court may exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the

4

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court has broad discretion regarding the admissibility of evidence at trial. *Frye v. CSX Transp., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019).

### IV. DISCUSSION

Defendants move to exclude certain expert testimony.

Defendants say trial is limited to two issues: (1) "Whether actions taken by Royal Palm Investment Management Company, LLC were impermissible under the parties [*sic*] Partnership Agreement and/or the Florida Partnership Act"; and (2) "Whether the transfer of assets by convicted Ponzi schemer Gregory McKnight were fraudulent transfers that can be traced to the individual defendants and recovered by the Receiver Robert Gordan [*sic*]." [ECF No. 179, PageID.7940].

Defendants highlight four opinions Porten intends to offer. They say those opinions are irrelevant to the issues remaining in this case. The opinions are:

> (1) "The investment recommended by the Defendants was not suitable for Legisi";
>
> (2) "The investment recommended by Defendants would not pass a reasonable basis suitability test";
>
> (3) "There were numerous improper and misleading disclosures of key documents and undisclosed conflicts of interest"; and

5

> (4) "The Defendants did not conduct proper due diligence on Legisi, ignoring red flags and failing the basic 'know your customer' requirement."

[*Id.*, PageID.7942].

Plaintiff says Porten's opinions are relevant to his fraudulent transfer claim under M.C.L. § 566.34(1).

Before addressing the challenged opinions, it is necessary to discuss Plaintiff's claim under M.C.L. § 566.34(1).

### A.   M.C.L. § 566.34(1)

Plaintiff's claim under this statute is based on transfers that were made by Legisi with "actual intent to hinder, delay, or defraud" creditors. *See* M.C.L. § 566.34(1).

As Plaintiff points out, Judge Tarnow already determined that the actual intent to defraud element is satisfied based on the Ponzi scheme presumption:

> Under the "Ponzi scheme presumption," courts have found that investment transfers through Ponzi schemes are presumed to be made with "actual intent to hinder, delay or defraud" creditors. *See In re Bernard L. Madoff Inv. Secs. LLC*, 458 B.R. 87, 104 (Bankr. S.D.N.Y. 2011) (finding that the 'Ponzi scheme presumption' establishes a debtor's fraudulent intent). Therefore, under this presumption, the actual intent to defraud element of Plaintiff's UFTA claims is satisfied

[*See* ECF No. 165, PageID.7722].

6

With the intent element satisfied, the burden of proof shifts to Defendants to prove that they received the transfers "in good faith" and "for a reasonably equivalent value." M.C.L. § 566.38(1).

### B. Opinions 1 and 2

Defendants say Plaintiff's securities claims have been dismissed and that "the suitability of an investment . . . has nothing to do with whether the Management Company proper[l]y conducted its operations after Mr. McKnight made his investment or whether the transfer of money was a fraudulent conveyance." [ECF No. 179, PageID.7942].

Plaintiff says these opinions are relevant to whether Defendants provided "reasonably equivalent value" for the transfers of funds. Plaintiff says that Porten will opine that an investment in Defendants' real estate fund was unsuitable for Legisi or any other investor. In reaching this opinion, "Porten compares the attributes of [Defendants' fund] with other real estate private equity funds, including its astronomical management fees, the general partner's 50% profit share (with no capital invested), lack of liquidity for seven years, no track record, and inexperience of the management team." [ECF No. 180, PageID.7999-8000]. Porten's testimony will also include how Bruce Rosetto's financial projections showed that while it was an "excellent rate of return for [Defendants],"

7

Legisi "would attain a 'very slim' 20% aggregate return on its investment over five years, i.e., four percent per year, on average, at a time when a federally-insured bank account offered more than five percent per year." [*Id.*, PageID.7994-95].

The Court agrees with Plaintiff. Porten's testimony regarding the suitability of investment is relevant to whether Legisi received a "reasonably equivalent value" for its investment. *See In re Michigan Mach. Tool Control Corp.*, 381 B.R. 657, 669 (Bankr. E.D. Mich. 2008) ("Reasonably equivalent value" is determined based on "all the facts and circumstances." (citation omitted)).

The Court DENIES Defendants' motion with respect to Porten's first two opinions.

### C. Opinion 3

Defendants say the third opinion (i.e., that "[t]here were numerous improper and misleading disclosures of key documents and undisclosed conflicts of interest") is not relevant because the alleged improper and misleading disclosures concerned the dismissed securities act claims.

Plaintiff appears to agree that this opinion is no longer relevant. Indeed, he says "Mr. Porten's testimony on the Defendants' failures to disclose pertinent facts to Legisi would not be relevant now that the

8

securities fraud claims are no longer in the case." [ECF No. 180, PageID.8000].

The Court GRANTS Defendants' motion with respect to the third opinion and excludes Porten's testimony on this opinion.

**D.     Opinion 4**

Defendants argue that the fourth opinion is "irrelevant because it is based on an inapplicable Financial Industry and Regulatory Authority ('FINRA') 'know your customer rule' and [because it] fails to identify one alleged 'red flag' that the defendants had a duty to recognize and actually did become aware of and miss." [ECF No. 179, PageID.7942-43]. Defendants say it is undisputed that they were not the sellers of the investment to Legisi/McKnight (Sierra was), they had no contact with McKnight, and they were not members of the FINRA.

Plaintiff says Porten's testimony regarding Defendants' failure to conduct proper due diligence and evidence that they ignored red flags is relevant to demonstrate their lack of good faith under M.C.L. § 566.38. The Court agrees.

Determining whether Defendants received funds in "good faith" is judged using an objective standard. *In re World Vision Ent., Inc.*, 275 B.R. 641, 658-59 (Bankr. M.D. Fla. 2002). Under this standard,

9

> Courts look to what the transferee objectively knew or should have known rather than examining what the transferee actually knew from a subjective standpoint. If the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and diligent inquiry would have discovered the fraudulent purpose, then the transfer is fraudulent. A transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency. Further, a transferee may not remain willfully ignorant of facts which would cause it to be on notice of a debtor's fraudulent purpose, and then put on blinders prior to entering into transactions with the debtor and claim the benefit of [the good faith defense].

*Id*. at 659 (internal citations, brackets, and quotation marks omitted).

Contrary to Defendants' contention, whether they ignored "red flags" about Legisi and what due diligence they engaged in are relevant to whether they received the transfers in good faith. Judge Tarnow addressed the "red flags" known to Defendants in his summary judgment order:

> Defendants received no shortage of red flags regarding Plaintiff's fraudulent purposes. Legisi's website contained outlandish promises of high returns, which Bruce Rosetto concluded was an "untenable business proposition." A google search of Legisi would have also found the CNNMoney.com article which labeled Legisi as a "possible scam" and highlighted its website as containing red flags for potential investors. Sierra even prepared a Suspicious Activity Report about Legisi which Bruce Rosetto merely dismissed as "foolish." But perhaps the most glaring red flag was the SEC's inquiry to Sierra regarding Legisi's investments. This evidence indicates that a valid dispute [exists] regarding whether Defendants knew or at least should have known of Plaintiff's fraudulent transfer.

[ECF No. 165, PageID.7722-23 (internal citations omitted)].

Porten may testify regarding the many red flags throughout the Legisi website and other events in the record that he opines should have alerted Defendants that Legisi was a fraud.

Moreover, although Defendants were not members of FINRA and they did not have contact with McKnight, Porten also may opine that Defendants failed the basic "know your customer" requirement.

As Plaintiff points out, Bruce Rosetto, as Sierra's attorney, was specifically tasked with advising Sierra – who was subject to FINRA's requirements – whether it should accept Legisi's funds for investment. As counsel for Sierra, Bruce Rosetto needed to engage in the level of due diligence required for his broker-dealer client.

Because this opinion concerns the level of due diligence Bruce Rosetto engaged in or should have engaged in, it also is relevant for the jury when determining what Bruce Rosetto/Defendants knew or should have known concerning whether they received Legisi's transfers in good faith. *See In re World Vision*, 275 B.R. at 658-59.

Defendants say that if the Court finds the "red flag" opinion relevant to the fraudulent transfer analysis, "it should still be excluded [under] Fed. R. Evid. 403 as unfairly prejudicial and a waste of time because it is based on a FINRA standard that does not apply and [there were] no actual instances

11

when a purported 'red flag' was presented to defendants and ignored by them." [*Id.*, PageID.7943].

This argument lacks merit. What Defendants knew or should have known about Legisi is what is at issue. Porten's testimony regarding red flags which a reasonably diligent person would have noticed is directly relevant to whether Defendants received Legisi's funds in good faith. *See In re World Vision*, 275 B.R. at 658-59. Moreover, contrary to Defendants' assertion that there were no red flags, Judge Tarnow already held that "Defendants received no shortage of red flags regarding Plaintiff's fraudulent purposes." [*See, supra*, ECF No. 165, PageID.7722-23].

The Court DENIES Defendants' motion with respect to opinion four.

## V.    CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion *in limine* to exclude irrelevant expert witness testimony [ECF No. 179].

The Court excludes testimony regarding Porton's third opinion. Porten may testify regarding the other challenged opinions.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: May 5, 2022