UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT D. GORDON, Receiver of
Legisi Marketing, Inc., Gregory N.
McKnight, and Legisi Holdings, LLC,

    Plaintiff,

v.

ROYAL PALM REAL ESTATE
INVESTMENT FUND I, LLLP, et al.,

    Defendants.
_____/

Case No. 09-11770
Honorable Victoria A. Roberts

## ORDER GRANTING PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ALLEGED DEFAMATION AND ITS ALLEGED EFFECTS [ECF No. 178]

### I. INTRODUCTION

Before the Court is Plaintiff's motion *in limine* to exclude evidence of alleged defamation and its alleged effects [ECF No. 178]. No hearing is necessary.

For the reasons below, the Court **GRANTS** the motion.

### II. BACKGROUND

#### A. This Action

This case arises from funds transferred for investment in a real estate investment fund organized and operated by Defendants. The investment

was made with funds transferred by Gregory McKnight – the operator of an illegal investment/Ponzi scheme called "Legisi" – with money derived from Legisi.  Law enforcement shut down the Legisi scheme shortly after McKnight/Legisi invested in Defendants' real estate fund.

The Court appointed Plaintiff, Robert Gordon, as the receiver for the estates of McKnight and Legisi.  As receiver, Plaintiff took possession of Legisi's assets, liquidated them, and paid restitution to victims of the Legisi Ponzi scheme.

Plaintiff brings this action against Bruce Rosetto, Roxanne Rosetto, Robert Rosetto, and several entities owned and/or controlled by the Rosettos. Bruce and Roxanne are married; Robert is their son.

Plaintiff seeks to recover the funds McKnight/Legisi transferred to Defendants for the allegedly fraudulent real estate investment fund. Plaintiff alleges Defendants knew or should have known that the money McKnight/Legisi transferred to the real estate investment fund were derived from an illegal investment scheme and, therefore, Defendants should not have accepted them.  Plaintiff also alleges that the Defendants are liable for improper use of the funds invested by McKnight/Legisi – including payments to invest in Defendants' other businesses and for professional fees that were unrelated to the real estate investment fund.

Four claims remain: (1) Breach of Partnership Agreement (Count V); (2) Violation of Florida Revised Uniform Limited Partnership Act (Count VI); (3) Avoidance of Fraudulent Transfers, M.C.L. § 566.35(1) (Count X); and (4) Avoidance of Fraudulent Transfers, M.C.L. § 566.34(1) (Count XI). Counts V and VI are against Bruce Rosetto and Royal Palm Investment Management Company only. Plaintiff seeks to hold Bruce Rosetto personally liable on a veil-piercing theory under all four remaining claims.

The Defendants deny liability and contend they did nothing wrong. They claim the illegal source of the funds was hidden from them and the actions they took were authorized by the partnership agreement to further the interests of the real estate investment fund.

Notably, Defendants can avoid liability on Plaintiff's fraudulent transfer claims if they can prove that they received the transfers of funds both in good faith" and "for a reasonably equivalent value."  M.C.L. § 566.38(1).

Trial is scheduled to begin May 24, 2022.

**B.    Alleged Defamation and Defendants' Defamation Lawsuit**

In 2014, Plaintiff's counsel served subpoenas for documents on Greenberg Traurig ("Greenberg"), which was one of Bruce Rosetto's law firms that served as counsel for the real estate fund. Greenberg objected to

3

the subpoenas and filed an action in the Southern District of Florida for adjudication of its objections.

A reporter for the Daily Business Review ("DBR") picked up on the dispute and made inquiries regarding the underlying action. On April 4, 2014, an article was published in the DBR which summarized Plaintiff's claims and quoted both sides' attorneys. In a section entitled "Fraud Alleged," the article quoted one of Plaintiff's attorneys as stating: "The investigation that we have conducted to date has confirmed that Mr. Rosetto participated in securities fraud with respect to the Royal Palm Real Estate Investment Fund."

In March 2016, nearly two years after the DBR article was published, Bruce Rosetto filed an action for defamation against Plaintiff's attorneys in Florida. Bruce Rosetto later amended his complaint to add his wife, Roxanne, as a plaintiff and to add a count for loss of consortium allegedly caused by the defamation.

Plaintiff's attorneys moved to dismiss the action for lack of subject matter jurisdiction pursuant to the Barton Doctrine, which requires that a claimant obtain leave of the receivership court before filing suit against a court-appointed receiver or attorneys/agents retained by the receiver. The Rosettos indisputably failed to seek leave from the appointing court.

In June 2017, the Florida court granted the motion to dismiss based on the Barton Doctrine. *See Rosetto v. Murphy*, No. 16-81342, 2017 WL 2833453, at *3 (S.D. Fla. June 30, 2017) (noting that the quoted statement was authorized because it "was based directly on public court filings such as the Receiver's Complaint against the Rosettos in the Michigan Action"). The Eleventh Circuit affirmed the dismissal of the Rosettos' complaint, and the Supreme Court denied the Rosettos' application for a writ of certiorari.

### III. LEGAL STANDARD

A motion *in limine* refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). The purpose of these motions is "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).

The Court may exclude evidence on a motion *in limine* "only when [the] evidence is determined to be clearly inadmissible on all potential grounds." *United States v. Anderson*, ---- F.Supp.3d ----, 2021 WL 4427251, at *2 (E.D. Mich. Sept. 27, 2021). If the Court cannot determine whether evidence is clearly inadmissible on all grounds, it should defer evidentiary rulings until trial so that questions of foundation, relevancy, and

potential prejudice can be resolved in the proper context. *Id*. The Court should rarely grant a motion *in limine* which "exclude[s] broad categories of evidence." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). The "better practice is to deal with questions of admissibility when they arise." *Id*.

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if evidence is relevant, the Court may exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court has broad discretion regarding the admissibility of evidence at trial. *Frye v. CSX Transp., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019).

**IV.　DISCUSSION**

Plaintiff seeks to preclude evidence of the alleged defamation of Bruce Rosetto and its alleged effects – including Roxanne Rosetto's purported suicide attempt. Plaintiff says the alleged defamation and its alleged effects are not relevant to any element of any claim or defense. He

says his claims are based on events that occurred between 2007 and 2011; the alleged defamation and its asserted effects occurred in 2014.

Alternatively, Plaintiff argues that even if this evidence has some relevance, the Court should exclude it under Fed. R. Evid. 403 because it would be substantially more prejudicial than probative, would confuse the issues, and would mislead the jury. Plaintiff says evidence of the alleged defamation and its claimed effects on the Rosettos – including allegedly causing Roxanne Rosetto to attempt suicide – would inflame the jury on a tangential matter and would have an undue tendency to suggest a decision on an improper and emotional basis.

Finally, Plaintiff says the Court should reach the same conclusion if, as expected, Defendants propose to offer this evidence as part of a narrative of the alleged adverse effects of this litigation.

Defendants say the Court should deny Plaintiff's motion because "evidence of how this litigation and Plaintiff's allegations against them has affected them is relevant and admissible to show their 'state of mind' and 'good faith' acceptance of any funds transferred to or received by them from Legisi." [ECF No. 181, PageID.8050].

7

Defendants quote *Swirple v. MGM Grand Detroit, LLC*, 2020 WL 561904, at *4 (Mich. Ct. App. Feb. 4, 2020), for the legal conclusion: "The primary orientation with regard to 'good faith' is whether defendant knowingly participated in acts or as part of a plan to hinder or defraud plaintiffs."

Defendants then say, "Courts look to the surrounding circumstances to determine the 'state of mind' of the recipient and evidence on that issue can vary according to the circumstances. *See, e.g., id.* at *5." [ECF No. 181, PageID.8052]. Defendants cite *Swirple* for this statement. However, *Swirple* does not support this proposition. In fact, the term "state of mind" is not used anywhere in *Swirple*.

Finally, Defendants say:

> Here, as presented by the defendant in *Swirple*, the Rosettos seek to present relatively brief evidence of how they responded when they became aware of the true source of Legisi's funds. Unlike the likely reaction of people who would have known of his illicit actions and walked away, they were shocked and yet determined to maintain the Fund's investment in the properties. They continued to pay the bills, maintain the properties, search for tenants and look for new financing alternatives. Most of the time without being paid for their work.
>
> When litigation ensued and they were named as defendants and with all kinds of untoward actions alleged to have been committed by them, they experienced stress, health concerns, lost work opportunities and Mrs. Rosetto even attempted suicide. She had never even had a traffic ticket but was being labeled a fraud in cahoots with a criminal. This evidence will

> show that the Rosettos took and take this matter seriously. They did not believe they had done anything wrong in accepting the Legisi funds. They had acted in good faith accepting and working with those funds, and the effect the allegations against them has had on them is evidence of their "state of mind" when they accepted those funds.

[ECF No. 181, PageID.8052 (internal paragraph break added)].

Although Defendants mischaracterize *Swirple*, the Court will allow Defendants to testify that they were shocked to learn the source of Legisi's funds since that is relevant to their good faith defense – i.e., that they did not know Legisi was a Ponzi scheme. Moreover, this testimony does not fall within the purview of Plaintiff's motion, because it is not evidence of the alleged defamation of Bruce Rosetto or its alleged effects on Defendants.

The Court will also allow Defendants to testify that they continued to manage the investment in the properties after learning of the Ponzi scheme. It is not evidence of the alleged defamation or its alleged effects.

But the Court will not allow post-claim accrual state of mind testimony ("When litigation ensued and they were named as defendants and with all kinds of untoward actions alleged to have been committed by them, they experienced stress, health concerns, lost work opportunities and Mrs. Rosetto even attempted suicide.").

*Swirple* does not support the proposition that courts look to a recipient's state of mind in determining whether they proved they received

9

transfers in good faith.  Determining whether Defendants received funds in "good faith" is judged using an objective standard.  *In re World Vision Ent., Inc.*, 275 B.R. 641, 658-59 (Bankr. M.D. Fla. 2002).  Under this standard,

> Courts look to what the transferee objectively knew or should have known rather than examining what the transferee actually knew from a subjective standpoint. If the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and diligent inquiry would have discovered the fraudulent purpose, then the transfer is fraudulent.  A transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency.  Further, a transferee may not remain willfully ignorant of facts which would cause it to be on notice of a debtor's fraudulent purpose, and then put on blinders prior to entering into transactions with the debtor and claim the benefit of [the good faith defense].

*Id*. at 659 (internal citations, brackets, and quotation marks omitted).

Evidence that Defendants experienced stress, health concerns, and lost work opportunities, and that Mrs. Rosetto attempted suicide when this litigation ensued is not relevant to whether Defendants "knew or should have known" of Legisi's fraudulent purpose (i.e., that Legisi was a Ponzi scheme).

Defendants' argument that their stress and Mrs. Rosetto's alleged suicide attempt show they did not know the source of the funds until suit was filed lacks merit.  Defendants fail to show that only innocent defendants feel stress and/or attempt suicide.

Because Defendants fail to show that their stress and Mrs. Rosetto's suicide attempt are relevant to their good faith, the Court will not allow Defendants to testify or submit evidence on these topics. The Court excludes evidence of the alleged defamation of Bruce Rosetto and its alleged effects on Defendants as not relevant under Fed. R. Evid. 401 and 402.

Moreover, as Plaintiff argues, even if this evidence did have some probative value, that probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403.

## V.     CONCLUSION

The Court **GRANTS** Plaintiff's motion *in limine* to exclude evidence of alleged defamation and its alleged effects [ECF No. 178].

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  May 5, 2022